UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JOHN P. CHARTERS, individually and on
behalf of all others similarly situated,

        Plaintiff,

v.

JOHN HANCOCK LIFE INSURANCE
COMPANY (U.S.A.)

        Defendant.

CIVIL ACTION
No. 1:07-cv-11371-NMG

# MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT

James O. Fleckner (BBO #641494)
Anthony M. Feeherry (BBO #160960)
John J. Cleary (BBO #086240)
Alison V. Douglass (BBO #646861)
GOODWIN PROCTER LLP
Exchange Place
Boston, MA 02109
Telephone: (617) 570-1000
Facsimile: (617) 523-1231

**Attorneys for Defendant**
**John Hancock Life Insurance Company (U.S.A.)**

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

FACTUAL BACKGROUND ....................................................................................................3

ARGUMENT ...........................................................................................................................7

    I.       Standard of Review ...................................................................................................7

    II.     The Complaint Must Be Dismissed Because John Hancock Is
          Not a Relevant ERISA Fiduciary..................................................................................8

          A.       Fiduciary Status Under ERISA Requires Discretionary
                   Authority or Control. ....................................................................................8

          B.       John Hancock Is Not an ERISA Fiduciary Because It Does Not
                   Possess or Exercise Authority or Control over Plan Investments...................10

               1.       The Contract Makes Clear that John Hancock Possesses
                        Only Ministerial Powers. ....................................................................10

               2.       John Hancock's Offering of a Platform of Investment
                        Options Does Not Confer ERISA Fiduciary Status............................11

               3.       John Hancock's Receipt of Revenue Sharing Payments
                        Does Not Confer Fiduciary Status. .....................................................14

    III.    Plaintiff Has No Standing to Sue on Behalf of the Fiduciaries of Plans to
          Which Plaintiff Is a Complete Stranger. ....................................................................15

           A.       ERISA Limits Standing to Sue on Behalf of a Plan to that Plan's
                   Participants, Beneficiaries, Fiduciaries, and the Secretary of Labor. ..............16

          B.       As the Fiduciary of One Plan, Plaintiff Is Not Authorized By
                   ERISA to Bring Claims on Behalf of Plans Other Than His Own. .................17

CONCLUSION........................................................................................................................21

# TABLE OF AUTHORITIES

CASES

*A.C. Steelman v. Prudential Ins. Co. of America,*
No. Civ. S-06-2746, 2007 WL 2009805 (E.D. Cal. Jul 6, 2007)..........................................4, 7

*Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co.,*
267 F.3d 30 (1st Cir. 2001).........................................................................................7

*Beddall v. State Street Bank and Trust Co.,*
137 F.3d 12 (1st Cir. 1998)................................................................................. Passim

*Bell Atlantic v. Twombly,*
550 U.S. __, 127 S. Ct. 1955 (2007)............................................................................7

*Blackmar v. Lichtenstein,*
603 F.2d 1306 (8th Cir. 1979) ...................................................................................20

*Board of Educ. of Twp. High School v. Climatemp, Inc.,*
79 C 3144, 1981 WL 2033 (N.D. Ill. Feb. 20, 1981)..................................................16

*Buck v. Am. Airlines, Inc.,*
476 F.3d 29 (1st Cir. 2007)..........................................................................................7

*Chemung Canal Trust Co. v. Sovran Bank/Maryland,*
939 F.2d 12 (2d Cir. 1991)..........................................................................................20

*Chicago District Council of Carpenters Welfare Fund v. Caremark, Inc.,*
474 F.3d 463 (7th Cir. 2007) ......................................................................................15

*Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co.,*
228 F.3d 24 (1st Cir. 2000)..........................................................................................11

*Cotton v. Mass. Mut. Life Ins. Co.,*
402 F.3d 1267 (11th Cir. 2005) ..................................................................................12

*Cottrill v. Sparrow, Johnson & Ursillo, Inc.,*
74 F.3d 20 (1st Cir. 1996)............................................................................................9

*Cripps v. Life Ins. Co. of North America,*
980 F.2d 1261 (9th Cir. 1992)......................................................................................17

*Forsythe v. Sun Life Fin., Inc.,*
417 F. Supp. 2d 100 (D. Mass. 2006) .........................................................................16

*Garganigo v. Wyman-Gordon Co.,*
Civ. A. No. 93-40042-NMG, 1994 WL 326621 (D. Mass. June 16, 1994) ..........................18

*Haddock v. Nationwide Fin. Servs., Inc.,*
    419 F. Supp. 2d 156 (D. Conn. 2006) ........................................................................14, n.4

*Kodes v. Warren Corp.,*
    24 F. Supp. 2d 93 (D. Mass. 1998) ...........................................................................13, n.3

*Lee v. Prudential Ins. Co. of America,*
    673 F. Supp. 998 (N.D. Cal. 1987) .....................................................................................19

*Massachusetts Mut. Life Ins. Co. v. Russell,*
    473 U.S. 134 (1985)..............................................................................................................16

*Mertens v. Hewitt Assocs.,*
    508 U.S. 248 (1993).........................................................................................................8, 16

*Modern Woodcrafts, Inc. v. Hawley,*
    534 F. Supp. 1000 (D. Conn. 1982) ...................................................................................21

*Northeast Dept. ILGWU Health and Welfare Fund v. Teamsters Local Union No. 229*
    *Welfare Fund*, 764 F.2d 147 (3d Cir. 1985) ...................................................................21

*Pegram v. Herdrich,*
    530 U.S. 211 (2000)................................................................................................................8

*Pilot Life Ins. Co. v. Dedeaux,*
    481 U.S. 41 (1987)................................................................................................................17

*Ruppert v. Principal Life Ins. Co.,*
    No. 06-CV-903-DRH, 2007 WL 2025233 (S.D. Ill. Jul 9, 2007) ....................................19, 20

*Sanofi-Synthelabo Inc. v. Eastman Kodak Co.,*
    No. 99 Civ. 4888, 2000 WL 1611068 (S.D.N.Y. Oct. 27, 2000) ...........................................21

*Schulist v. Blue Cross of Iowa,*
    717 F.2d 1127 (7th Cir. 1983) ...........................................................................................15

*Seaway Food Town, Inc. v. Med. Mut. of Ohio,*
    347 F.3d 610 (6th Cir. 2003) ..............................................................................................15

*Smith v. Hickey,*
    482 F. Supp. 644 (S.D.N.Y. 1979) ......................................................................................21

*Sonoco Prods. Co. v. Physicians Health Plan, Inc.,*
    338 F.3d 366 (4th Cir. 2003) ..............................................................................................21

*State Street Bank and Trust Co. v. Denman Tire Corp.,*
    240 F.3d 83 (1st Cir. 2001).............................................................................................17, 18

*Terry v. Bayer Corp.*,
   145 F.3d 28 (1st Cir. 1999) ..............................................................................9, 12

*Tucker v. Berkshire Life Ins. Co.,*
   No. 98-12575-MLW, 1999 WL 329727 (D. Mass. May 19, 1999)........................19

*Warth v. Seldin*,
   422 U.S. 490 (1975) .............................................................................................18

## STATUTES, RULES & REGULATIONS

26 U.S.C. § 401(k) ...........................................................................................................3

29 U.S.C. § 1002(1) .....................................................................................................3, 17

29 U.S.C. § 1002(21)(A).................................................................................................8

29 U.S.C. § 1002(34) .......................................................................................................3

29 U.S.C. § 1104 .........................................................................................................6, 8

29 U.S.C. §§ 1106(b)(1) and (3) ....................................................................................6, 8

29 U.S.C. § 1132 ...........................................................................................................19

29 U.S.C. § 1132(a)(2).................................................................................................6, 17

29 U.S.C. § 1132(a)(3).......................................................................................6, 8, 17, 18

Federal Rule of Civil Procedure 12(b)(6) .....................................................................1, 7

29 C.F.R. § 2509.75-8......................................................................................................9, 11

## OTHER AUTHORITIES

DOL Adv. Op. 97-16A (May 22, 1997) ......................................................................13, 14

H.R. Conf. Rep. No. 93-1280 (1974), reprinted in 1974 U.S.C.C.A.N. 5038 ...............19

Defendant John Hancock Life Insurance Company (U.S.A.) ("John Hancock") submits this memorandum and appendix in support of its Motion to Dismiss Plaintiff's Class Action Complaint (the "Complaint" or "Compl.") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## INTRODUCTION

Plaintiff, John P. Charters ("Plaintiff"), trustee of his law firm's 401(k) plan (the "Plan"), brings this suit against John Hancock, whom Plaintiff selected to provide services to his firm's Plan.  Under the Accumulated Retirement Account Group Annuity Contract (the "Contract") that governs the parties' relationship – and that remains in effect today – John Hancock agreed to provide access to investment options and perform specific ministerial recordkeeping services for the Plan.  Plaintiff asserts that John Hancock breached its alleged fiduciary duty under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), and violated ERISA prohibited transaction rules applicable to plan fiduciaries, by receiving "excessive fees" for its services.  (Compl. ¶ 2.)  These purported excessive fees are characterized as "Revenue Sharing Payments," receipt of which is disclosed (*Id.* ¶ 40), that are paid to John Hancock by mutual fund advisers when such funds are selected as investment options by Plaintiff from the platform John Hancock made available.  Regardless of whether John Hancock's revenue is somehow "excessive" – which it is not – Plaintiff's claims must be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim under ERISA.

Quite simply, John Hancock is not a "fiduciary" under the parties' Contract or within the meaning of ERISA.  The Contract authorizes John Hancock to provide only ministerial services to the Plan.  Control of the Plan is vested in its discretionary fiduciaries, including Plaintiff, not John Hancock.  John Hancock does not, as a matter of law, become an ERISA fiduciary merely

1

by offering a product (a platform of investment options and plan services) to Plaintiff for Plaintiff's discretionary selection.  Indeed, Plaintiff is, and always has been, free to select an entirely different provider if dissatisfied with any facet of the products or services offered by John Hancock.  Nor does John Hancock become an ERISA fiduciary by receiving Revenue Sharing Payments that are disclosed in the Contract.  Because Plaintiff's claims against John Hancock all depend on the existence of ERISA fiduciary status, which is lacking, the claims must all be dismissed.  To do otherwise would turn the unambiguous relationship of the parties on its head and have this Court rewrite the relevant agreements as well as ERISA's clear enforcement scheme to force John Hancock into a fiduciary role that it neither bargained for by contract nor assumed under ERISA's carefully crafted provisions.

Plaintiff's class claims similarly overreach.  Plaintiff purports to bring claims for breach of fiduciary duty against John Hancock not only on behalf of the Plan for which Plaintiff serves as fiduciary, but on behalf of the fiduciaries of *all* 401(k) plans for which John Hancock provides services.  However, Plaintiff lacks standing to assert claims on behalf of any employee benefit plan other than his own.  ERISA fiduciaries are not allowed to usurp the authority and responsibility of fiduciaries of other plans with respect to the relationship they have with their service providers.  Thus, even if some aspect of Plaintiff's breach of ERISA fiduciary duty and prohibited transaction claims could, *arguendo*, survive dismissal, Plaintiff's class allegations must be dismissed.

# FACTUAL BACKGROUND

### *The Parties*

Plaintiff is an attorney and a principal of the law firm Charters, Heck, O'Donnell & Petrulis, P.C., sponsor of the Charters, Heck, O'Donnell & Petrulis, P.C. 401(k) Plan. Plaintiff is a trustee of the Plan. (Compl. ¶¶ 1, 6.) Plaintiff purports to bring his claims on behalf of his own Plan, and on behalf of a class of "all trustees, sponsors and administrators of all 'employee benefit plans' under ERISA, 29 U.S.C. § 1002(1), that owned variable annuity contracts from Defendant." (*Id.* ¶ 50.)

John Hancock is an insurance company. It entered into an Accumulated Retirement Account Group Annuity Contract with Plaintiff, as trustee of the Plan, in April 2005. (*Id.* ¶¶ 1, 7.) Pursuant to the Contract, Plaintiff selected and retained John Hancock to provide certain ministerial recordkeeping services to the Plan.

### *The Plan*

The Plan is a "defined contribution" or "individual account" employee benefit plan within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34). (Compl. ¶ 9.) The Plan provides individual accounts for participants and pays benefits to each participant based solely upon the amount credited to his or her individual account. (*Id.* ¶ 9.) In this regard, the Plan is a typical retirement plan established under Section 401(k) of the Internal Revenue Code, 26 U.S.C. § 401(k). (*Id.*) As of April 5, 2005, when Plaintiff applied to John Hancock for a group annuity contract for the Plan, the Plan had five participants and an estimated $250,000 in assets. (*See* Appendix A hereto ("App. A"), Application, which is incorporated into the Contract by reference.)[1]

---

[1] Appendix A contains the Contract and Application, which is incorporated into the Contract by reference. Appendix B contains the Contract Proposal that accompanies the Contract and Application. These documents are

### *The Contract*

The Contract between Plaintiff and John Hancock, which became effective on May 31, 2005 and continues in force to this day, provides that John Hancock will render recordkeeping services for the Plan. (Compl. ¶¶ 10-16; App. A., Contract, at 1.) Specifically, the Contract provides that John Hancock will perform certain ministerial administrative services as set forth in the Contract's Services Schedule. (App. A., Contract, at 1, 4.) These services include the recordkeeping of contributions made by Plan participants, preparing confirmation statements reflecting participant enrollments, contributions, allocations, withdrawals and transfers, and other account maintenance tasks. (App. A, Contract, at 1.) As the Contract states:

> In issuing this Contract, [John Hancock] agrees to perform certain administrative services relating to the Contract for [Plaintiff]. These services have been outlined in the Service Schedule attached to this Contract. By performing these services, [John Hancock] does not assume the responsibility of [Plaintiff] or any other Fiduciary of the Plan, nor is [John Hancock] providing any advice or representation regarding tax and/or legal matters.

(*Id.*, at 11, ¶ 17.) The Plan's trustees (i.e., Plaintiff) also expressly retained the right to terminate the Contract. (*Id.*, at 12, ¶ 23.)

In carrying out its ministerial functions, among other things, John Hancock establishes sub-accounts to process participant contributions to the Plan. The sub-accounts correlate to the pre-selected investment products that Plaintiff, as Plan trustee, has chosen to make available to participants. (Compl. ¶¶ 19, 20, 26.)[2] The Contract Proposal signed by Plaintiff contains Plaintiff's initial elections from the platform of sub-account options made available by John Hancock. (*See* Appendix B hereto ("App. B"), Contract Proposal, at 1.) In the words of the

---

properly considered on a motion to dismiss because the allegations in the complaint are premised on the contractual relationship between the parties (*e.g.*, Compl. ¶¶ 10-13, 15-18, 21-23, 32, 40, 42-43, 45, 59), and therefore incorporate these agreements explicitly. *See Beddall v. State Street Bank and Trust Co.*, 137 F.3d 12 (1st Cir. 1998) (considering trust agreement on a motion to dismiss); *A.C. Steelman v. Prudential Ins. Co. of America*, No. Civ. S-06-2746, 2007 WL 2009805 (E.D. Cal. Jul 6, 2007) (considering annuity contracts).

[2] As Plaintiff alleges, the sub-accounts allow John Hancock to facilitate the movement of contributions from multiple participants with only a single daily transaction with each mutual fund. (Compl. ¶¶ 30-31.)

Contract: "Contributions remitted to this Contract may be invested only in the Investment Options selected by the Contractholder [defined as the trustees of the Plan]." (App. A, Contract, at 4, ¶ 3.)

The Contract expressly identifies all fees charged to the Plan. The Contract provides for participant fees and variable asset charges. (Compl. ¶ 32.) The "Participant Fee Schedule" identifies the fixed cost to the Plan based on the number of participants, average participant transfer amount, and type of data (electronic or not) utilized by the Plan. The "Charge Schedule Asset Charges" lists the variable asset charges. For sub-accounts investing in third-party mutual funds, the asset charge for each investment option will consist of the underlying investment fund's expenses and an "administrative maintenance charge." (App. A, Contract, at Separate Account Riders B-E.)

The Contract expressly states that the administrative maintenance charge "will be reduced if [John Hancock] or an affiliate receives asset based distribution charges ('12b-1 fees') or sub-transfer agency fees from the underlying mutual fund or its underwriter." (App. A, Contract, at Separate Account Riders B-E.) Plaintiff refers to any such charges or fees received by John Hancock or its affiliates as "Revenue Sharing Payments." The Complaint does not allege, nor could it, that the full extent of costs to the Plan was hidden before Plaintiff entered into the Contract, or at any point during the Contract's duration. Indeed, the Contract itself identifies each of the fees that are alleged to be excessive in the Complaint. (App. A, Contract, at 5, ¶ 4, Participant Fees and Charge Schedules, and Separate Account Riders B-E.) And in signing the Contract Proposal, Plaintiff expressly acknowledged that "[a]ll provisions contained in this proposal relating to the assumptions, charges, fees, adjustments and investment options applicable to all contributions, loans and withdrawals have been explained to me. I fully

understand the effect of these charges and fees and adjustments under the contract applied for."
(App. B, Contract Proposal, at 28.)  Plaintiff further certified in the Contract Proposal that his
firm had the benefit of professional advice in evaluating the terms of the proposed contract.  (*Id.*,
at 26.)

### *Plaintiff's Claims*

On these facts, Plaintiff alleges that John Hancock breached ERISA § 404, 29 U.S.C. §
1104, fiduciary duties and engaged in prohibited transactions set forth in ERISA §§ 406(b)(1)
and (3), 29 U.S.C. §§ 1106(b)(1) and (3).  In Count I, alleging breach of ERISA fiduciary duty,
the Complaint alleges that John Hancock charged excessive fees and accepted Revenue Sharing
Payments from third-party mutual funds.  (Compl. ¶¶ 3, 60.)  In Count II, asserting breach of
ERISA §§ 406(b)(1) and (3) prohibited transactions, the Complaint alleges that John Hancock's
"receipt and retention of the excessive charges and Revenue Sharing Payments are transactions
prohibited by ERISA."  (Compl. ¶ 69.)  Plaintiff seeks relief in both counts under ERISA §§
502(a)(2) and (3), 29 U.S.C. §§ 1132(a)(2) and (3).

Plaintiff alleges that ERISA §§ 404 and 406(b) apply to John Hancock because it
purportedly is a "fiduciary" of the Plan within the meaning of ERISA in that it allegedly
"exercises authority or control over the management or disposition of Plan assets."  (Compl. ¶
45.)  Plaintiff asserts that John Hancock "controls which mutual funds are available as
investment options for the Plan and its participants" and "uses its custody or control over the
mutual funds to obtain revenue sharing payments from mutual fund advisors."  (*Id.*)  Plaintiff
further alleges that the Revenue Sharing Payments are Plan assets, and that John Hancock is a
fiduciary as to the Revenue Sharing Payments because it "exercises authority or control

respecting their management or disposition by arranging for, accepting and retaining them."  (*Id.* ¶ 46.)

## **ARGUMENT**

The Complaint must be dismissed for failure to allege facts sufficient to establish relevant ERISA fiduciary status of John Hancock.

## I.    **Standard of Review**

Under Fed. R. Civ. P. 12(b)(6), dismissal is warranted where a plaintiff fails to allege facts sufficient to establish an essential element of his claim.  *See Beddall v. State Street Bank and Trust Co.*, 137 F.3d 12, 16 (1st Cir. 1998) (affirming dismissal of ERISA breach of fiduciary claims asserted against a plan's non-fiduciary service provider).  In determining whether a plaintiff has stated a claim, the "court need not accept a complaint's 'bald assertions' or 'unsupportable conclusions.'"  *Id.* at 17 (citations omitted); *see also Buck v. Am. Airlines, Inc.*, 476 F.3d 29 (1st Cir. 2007).  As the Supreme Court recently instructed, to survive dismissal under Fed. R. Civ. P. 12(b)(6), a complaint needs to plead more than "labels and conclusions;" rather, a complaint must contain "factually suggestive" allegations.  *Bell Atlantic v. Twombly*, 550 U.S. __, 127 S. Ct. 1955, 1965-66, n.5 (2007).

In deciding a motion to dismiss, it is proper for the Court to take into account Plan-related documents, including the Contract (which incorporates the Application) and the Contract Proposal, where Plaintiff's ERISA claims are "expressly linked to" those documents and their authenticity is not challenged.  *Beddall*, 137 F.3d at 16-17; *see also Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co.*, 267 F.3d 30, 34 (1st Cir. 2001) (considering an agreement between the parties on a motion to dismiss where the complaint "refers to the [agreement] or its terms numerous times"); *A.C. Steelman v. Prudential Ins. Co. of America*, No. Civ. S-06-2746, 2007 WL 2009805, at *1 n.4 (E.D. Cal. Jul 6, 2007) (court may consider contents of annuity

contracts in deciding defendant insurer's motion to dismiss even if not attached to complaint where complaint "refers extensively" to the contracts and contracts "incorporated by reference"). Indeed, "[a]ny other approach would seriously hinder recourse to Rule 12 motions, as a plaintiff could thwart the consideration of a critical document merely by omitting it from the complaint." *Beddall*, 137 F.3d at 17.

## II.      The Complaint Must Be Dismissed Because John Hancock Is Not a Relevant ERISA Fiduciary.

### A.      Fiduciary Status Under ERISA Requires Discretionary Authority or Control.

Plaintiff's claims against John Hancock hinge on whether John Hancock has relevant ERISA fiduciary status with respect to the challenged actions.  Because such status is lacking, the Complaint must be dismissed.

Claims for breach of fiduciary duty and prohibited transaction rules under ERISA §§ 404 and 406(b) may only be asserted against a party that is a fiduciary within the meaning of ERISA. *See Mertens v. Hewitt Assocs.*, 508 U.S. 248, 252-53 (1993) (affirming dismissal of claims under ERISA § 502(a)(3)).  As the Supreme Court stated:  "In every case charging breach of ERISA fiduciary duty . . . the threshold question is . . . whether [the defendant] was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000).  "[F]iduciary status is not an all or nothing proposition." *Beddall*, 137 F.3d at 18.  "[A] person is a plan fiduciary only 'to the extent' that he possesses or exercises the requisite discretion and control." *Id.* (quoting 29 U.S.C. § 1002(21)(A)).  Under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), a person is a fiduciary:

> To the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of

such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

Fiduciary status under ERISA, therefore, depends upon the exercise of, or the power to exercise, discretionary authority or control over the management of an ERISA plan or authority or control over the management or disposition of plan assets.

In determining ERISA fiduciary status – a predicate to any fiduciary duty – this circuit has consistently adhered to the distinction between having and not having discretionary power. *See, e.g., Terry v. Bayer Corp.*, 145 F.3d 28, 35 (1st Cir. 1999) (where administrator retained discretion, service provider was not a fiduciary); *Beddall*, 137 F.3d at 18 ("one's fiduciary responsibility under ERISA is directly and solely attributable to his possession or exercise of discretionary authority").  Indeed, "discretion [is] a *sine qua non* of fiduciary duty" under ERISA.  *Cottrill v. Sparrow, Johnson & Ursillo, Inc.*, 74 F.3d 20, 22 (1st Cir. 1996) (quotation omitted).

Guidance from the Department of Labor ("DOL"), the agency responsible for implementing ERISA, confirms that something more than a ministerial role is required for fiduciary status.  In Interpretive Bulletin 75-8, the DOL stated that a person who performs purely "ministerial functions" is not a fiduciary because such person does not have or exercise any discretionary authority or control regarding the management of the plan or any authority or control respecting management or disposition of its assets.  *See* IB 75-8, 29 C.F.R. § 2509.75-8. In the DOL's view, ministerial functions include collecting and applying plan contributions, preparing participant communications, and maintaining participant records.  *Id.*  The First Circuit has adopted this position.  *See Beddall*, 137 F.3d at 20 (affirming dismissal of claims against service provider where the provision of "mechanical administrative responsibilities" including

retaining the assets and keeping a record of their value were "insufficient to ground a claim of fiduciary status").

**B.      John Hancock Is Not an ERISA Fiduciary Because It Does Not Possess or Exercise Authority or Control Over Plan Investments.**

Plaintiff alleges that John Hancock is an ERISA fiduciary because it "exercises authority or control over the management or disposition of Plan assets." (Compl. ¶ 44.) Specifically, Plaintiff alleges that John Hancock is a fiduciary because it "controls which mutual funds are available as investment options" and "uses its custody or control over the mutual funds to obtain revenue sharing payments from mutual fund advisors." (Compl. ¶ 45.) This allegation fails.

**1.      The Contract Makes Clear that John Hancock Possesses Only Ministerial Powers.**

The Complaint fails adequately to allege ERISA fiduciary status because the Contract makes clear that John Hancock has no authority to choose investment options for the Plan. By purchasing the group annuity contract from John Hancock for the Plan, and hence retaining John Hancock as a service provider to the Plan, Plaintiff as discretionary fiduciary elected to offer participants solely investment options contained on the John Hancock service platform. Plaintiff also chose the specific investment options to make available to Plan participants, electing to offer all of the options made available to it. (App. B., Contract Proposal, at 1.) Indeed, the Contract states that "[s]ub-accounts will be selected or changed upon direction from the [plan trustees]," (App. A, Contract, at Separate Account Riders B-E), and that "[c]ontributions remitted to this Contract may be invested only in the Investment Options selected by the [plan trustees]." (*Id.*, at 4, ¶ 3.)

Other Contract provisions demonstrate that John Hancock held a ministerial, non-fiduciary role. For example, the Contract provides that John Hancock "will not be required to question any action of the [plan trustees]" and "will not be responsible to see that any action of

the [plan trustees] is authorized by the terms of the Plan, or any trust agreement or any other document executed in connection with the Plan." (*Id.*, at 12, ¶ 19.) The Contract states explicitly that, "[i]n issuing this Contract, [John Hancock] agrees to perform certain administrative services . . . By performing these services, [John Hancock] does not assume the responsibility of the Contractholder, Plan Administrator, Plan Sponsor or any other Fiduciary of the Plan . . . ." (*Id.*, at 11, ¶ 17.)

The Service Schedule sets forth the specific ministerial services to be provided by John Hancock, such as recordkeeping of contributions made by Plan participants, preparing confirmation statements reflecting participant enrollments, contributions, allocations, withdrawals and transfers, and other account and sub-account maintenance tasks. (Compl. ¶ 14; App. A, Contract, at 13.) These are the very tasks identified by the DOL as not giving rise to ERISA fiduciary status. *See* 29 C.F.R. § 2509.75-8.

**2.     John Hancock's Offering of a Platform of Investment Options Does Not Confer ERISA Fiduciary Status.**

In an effort to avoid dismissal for lack of relevant ERISA fiduciary status, Plaintiff alleges that John Hancock "controls which mutual funds are available as investment options." (Compl. ¶ 45.) But this allegation is of no avail. As set forth above, the Contract demonstrates that Plaintiff was solely responsible for selecting (i) John Hancock and its platform of services (including investment options) and (ii) the specific investment options to be made available under the Plan from among those offered on the John Hancock platform. To the extent that Plaintiff's allegation is belied by the clear language of the Contract, the Complaint's assertion to the contrary need not be credited. *See Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co.*, 228 F.3d 24, 32 (1st Cir. 2000) (to the extent that a written instrument "integral" to the complaint contradicts allegations in the complaint, the written instrument "trumps"). Because

11

Plaintiff, as trustee and named fiduciary of the Plan, retained exclusive discretion and authority for the management and selection of options available for investment of plan assets, John Hancock must be dismissed for lack of ERISA fiduciary status. *Terry v. Bayer Corp.*, 145 F.3d 28, 35 (1st Cir. 1998) (where a plan administrator retained discretion, a service provider was not a fiduciary); *see also Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1279 (11th Cir. 2005) ("sell[ing] its insurance products to the plan . . . [and] performance of . . . ministerial policy-related services . . . does not render an insurer . . . a fiduciary").

Plaintiff further alleges that John Hancock could exercise discretion because "[t]he Contract provides that Defendant has the right, in its sole discretion, to substitute alternative mutual funds, trusts or portfolios for the mutual funds it offers." (Compl. ¶ 18.) While the Complaint does not allege that John Hancock *did indeed* exercise this right, this allegation in any event is similarly insufficient to confer relevant ERISA fiduciary status. The Contract simply provides that John Hancock "reserves the right to substitute shares of another mutual fund, trust or portfolio thereof with similar investment objectives for each Sub-account." (App. A, Contract, at Separate Account Riders B-E.) It nowhere states that this right may be exercised in John Hancock's "sole discretion," as the Complaint alleges. Moreover, this "right to substitute" cannot be read in isolation, as Plaintiff would suggest, but rather must be read in conjunction with other provisions of the Contract that (i) require that changes to the sub-accounts be made "upon direction from" the plan trustees and (ii) permit John Hancock to invest contributions "only in the Investment Options selected by the Contractholder." (*Id.*, at 4, ¶ 3 and Separate Account Riders B-E.) Reading the Contract in its entirety, it is clear that Plaintiff himself – as Plan trustee – retains exclusive discretionary control and authority with respect to changes to the investment options, not John Hancock.

Indeed, the DOL has issued guidance on this very issue, instructing that a service provider's right to substitute investment options does not, in and of itself, confer ERISA fiduciary status. In an advisory opinion to Aetna Insurance Company, Inc. ("Aetna"), DOL Adv. Op. 97-16A (May 22, 1997) (the "Aetna Letter"), the DOL responded to Aetna's inquiry as to whether it would be considered an ERISA fiduciary by providing administrative or ministerial services to plans and offering investment options to plans where it retained the ability to delete or substitute available investments, but only with prior notice to the plan fiduciary, who would be given a reasonable opportunity to accept or reject the change. *Id.* at 5.[3] The DOL concluded that such an arrangement would not constitute the exercise of discretionary authority or control over the management of a plan or its assets "provided that the appropriate plan fiduciary in fact makes the decision to accept or reject the change." *Id.* Specifically, the DOL explained that the service provider must give advance notice of the change to the plan fiduciary and afford a reasonable period of time to accept or reject it. *Id.* Under such circumstances, the service provider "would not become a fiduciary solely as a result of deleting or substituting" a fund option. *Id.* In effect, a service provider like John Hancock can design the product that it offers to plans and is not acting as a fiduciary of any plan in doing so. Nor is it acting as a fiduciary when it changes its product offering, as long as it gives the authorized fiduciary of each plan the opportunity to accept the product as changed or to shift to a different product.

Here, the Complaint pleads no facts to suggest that John Hancock deviated from the type of procedures described in the Aetna Letter, nor could it. While the Contract states that John Hancock may substitute funds, it nowhere states that this right can be exercised unilaterally by

---

[3] "While [DOL] advisory opinions are not binding, courts give them great deference." *Kodes v. Warren Corp.*, 24 F. Supp. 2d 93, 99 n.1 (D. Mass. 1998).

John Hancock or in a manner that is inconsistent with the Aetna Letter's framework.[4]  In conjunction with other provisions of the Contract stating that Plaintiff has the right to select or change sub-accounts and that any contribution to the Plan can be "invested only in the Investment Options selected by" Plaintiff, (App. A, Contract, at 4, ¶ 3), the Complaint does not state, nor could it, that John Hancock has exercised sufficient authority or control to render it an ERISA fiduciary with respect to the selection of investment options to be available under the Plan.

### 3. John Hancock's Receipt of Revenue Sharing Payments Does Not Confer Fiduciary Status.

Plaintiff also alleges that John Hancock is an ERISA fiduciary by virtue of its receipt of Revenue Sharing Payments.  (Compl. ¶ 46.)  But this allegation is also insufficient.  The mere receipt of payments by a service provider does not create ERISA fiduciary status.  As disclosed in the Contract, John Hancock may receive payment from underwriters of the mutual funds that are held in the sub-accounts.  Specifically, the Contract states that John Hancock or its affiliates may receive "asset-based distribution charges . . . or sub-transfer agency fees from the underlying mutual fund or its underwriters."  (App. A, Contract, at Separate Account Riders B-E.)

Receipt of payments as disclosed in the Contract does not constitute an exercise of discretionary authority or control.  *See* Aetna Letter (receipt of "compensation" from mutual

---

[4] In this respect, the Contract distinguishes this case from the recent holding in *Haddock v. Nationwide Fin. Servs., Inc.*, 419 F. Supp. 2d 156 (D. Conn. 2006).  In *Haddock* the court held that defendant retained the right to exercise discretion where the contract language stated that it could exercise its judgment based on the purposes of the contract to determine what investment was appropriate.  *Id*. at 161 (quoting contract language that stated:  "if, in the judgment of [defendant], further investment in the shares of a Fund should become inappropriate in view of the purposes of the Contract, [defendant] may substitute shares of another Fund or Fund shares already purchased or to be purchased in the future").  Because the Contract here does not require or even contemplate that John Hancock will determine what investments are appropriate for this, or any, particular plan, and because the Contract expressly provides that the Plan trustees (i.e., Plaintiff) retain sole discretion and responsibility for the management and investment of plan assets, *Haddock* is factually distinguishable.

fund does not confer ERISA fiduciary status).  While the First Circuit has not had occasion to address this question, other circuits have made clear that mere receipt of fees and revenues, without an exercise of authority or control over ERISA plan assets to cause such payment, is not a fiduciary act.  *See Chicago District Council of Carpenters Welfare Fund v. Caremark, Inc.*, 474 F.3d 463 (7th Cir. 2007) (pharmacy benefit manager not a fiduciary by virtue of payments from pharmaceutical companies with respect to drugs authorized for ERISA plan); *Seaway Food Town, Inc. v. Med. Mut. of Ohio*, 347 F.3d 610, 618-19 (6th Cir. 2003) (HMO's adherence to the contractual term allowing it to retain funds resulting from provider discounts did not render HMO a fiduciary under ERISA); *Schulist v. Blue Cross of Iowa*, 717 F.2d 1127, 1130-32 (7th Cir. 1983) (insurer could not be held liable as an ERISA fiduciary for causing a plan to pay it allegedly "unreasonable compensation" where compensation was paid according to contracted rates).  Therefore, Plaintiff's allegations that John Hancock's receipt of Revenue Sharing Payments from mutual fund managers constitutes a fiduciary act and gives rise to claims for breach of ERISA fiduciary duty fail.

### III.    Plaintiff Has No Standing to Sue on Behalf of the Fiduciaries of Plans to Which Plaintiff Is a Complete Stranger.

Even if the Court were to conclude that the Complaint states claims for breach of ERISA fiduciary duty or prohibited transactions (which it does not), all of Plaintiff's claims other than those asserted with respect to the specific plan for which Plaintiff is trustee and fiduciary must be dismissed for lack of standing.  While, for the purposes of this motion, John Hancock asserts no challenge with respect to Plaintiff's standing to sue on behalf of the Plan, Plaintiff does not have standing to step into the role of fiduciary for numerous, unnamed plans as to which Plaintiff has no interest or fiduciary relationship.

Moreover, it is entirely appropriate for the Court to address standing at this stage, prior to any proceedings regarding class certification, because "[P]laintiff may not avoid the standing inquiry merely by styling his suit as a class action." *Forsythe v. Sun Life Fin., Inc.,* 417 F. Supp. 2d 100, 119 (D. Mass. 2006) (O'Toole, J.) (dismissing claims for lack of standing as to mutual funds in which plaintiff was not a shareholder even though such mutual funds were advised by the same defendant). In *Forsythe*, this Court specifically noted the salutary effect of addressing standing at the earliest possible juncture, before the Court and the parties expend unnecessary resources on discovery or class certification. *Id.* at 118 (noting the threat of "vexatious litigation and abusive discovery" in the securities class action litigation context). This salutary effect also has been recognized by courts striking class claims at the outset of litigation. *See, e.g., Board of Educ. of Twp. High School v. Climatemp, Inc.,* 79 C 3144, 1981 WL 2033, *2 (N.D. Ill. Feb. 20, 1981) (granting motion to strike class allegations and noting that "motions to strike are a reflection of the court's inherent power to prune pleadings in order to expedite the administration of justice and to prevent abuse of its process"). Here, Plaintiff's unprecedented attempt to abrogate the fiduciary role of countless unnamed plan fiduciaries, the defects of which are obvious and incurable, weighs heavily in favor of dismissal on the pleadings of all class-based claims.

A.     **ERISA Limits Standing to Sue on Behalf of a Plan to that Plan's Participants, Beneficiaries, Fiduciaries, and the Secretary of Labor.**

Courts have held time and again that ERISA is a "comprehensive and reticulated statute," *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 251 (1993) (citing cases), that explicitly enumerates rights and remedies and excludes implied rights of action, *see Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 145-48 (1985). Claims authorized by the statute, and the claimants who may bring them, are therefore expressly set forth in ERISA's detailed enforcement provisions.

16

With respect to the types of claims Plaintiff asserts here, ERISA authorizes only select parties to bring a civil action to enforce ERISA's provisions. *See* ERISA §§ 502(a)(2) and (3). ERISA § 502(a)(2) expressly confers standing on four classes of plaintiffs to seek "appropriate relief" under ERISA § 409: a participant, a beneficiary, a plan fiduciary, and the Secretary of Labor. *See* 29 U.S.C. § 1132(a)(2). ERISA § 502(a)(3) further authorizes a participant, a beneficiary, or a plan fiduciary to obtain other appropriate equitable relief for violations of the statute. *See* U.S.C. § 1132(a)(3). In short, "[n]o one except plan participants, beneficiaries, fiduciaries, and the Secretary of Labor is expressly authorized by § 1132(a) to bring claims in federal court." *Cripps v. Life Ins. Co. of North America,* 980 F.2d 1261, 1264 (9th Cir. 1992); *see also Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987) (noting the "deliberate care with which ERISA's civil enforcement remedies were drafted" in concluding that "the balancing of policies embodied in its choice of remedies argue strongly for the conclusion that ERISA's civil enforcement remedies were intended to be exclusive"); *State Street Bank and Trust Co. v. Denman Tire Corp.*, 240 F.3d 83, 88 (1st Cir. 2001) (ERISA "catalogues parties who may pursue civil actions to redress ERISA violations").

**B.    As the Fiduciary of One Plan, Plaintiff Is Not Authorized By ERISA to Bring Claims on Behalf of Plans Other Than His Own.**

Plaintiff's purported class claims are not permitted under ERISA. Plaintiff purports to assert claims on behalf of a putative class of "all trustees, sponsors and administrators of all 'employee benefit plans' under ERISA, 29 U.S.C. §1002(1), that owned variable annuity contracts from Defendant." (Comp. ¶¶ 1, 50.) However, while ERISA may authorize Plaintiff as Plan fiduciary to bring claims with respect to his own Plan, the statute does not authorize the trustee of one plan, or for that matter any plan fiduciary, to assert claims on behalf of plans to which that person is a complete stranger.

17

As an initial matter, Plaintiff's proposed class claims are defective on their face because one category of claimants Plaintiff purports to represent – plan sponsors – has no standing to assert breach of fiduciary duty claims under ERISA; ERISA simply does not confer a right of action on plan sponsors. *See State Street Bank and Trust Co. v. Denman Tire Corp.*, 240 F.3d 83 (1st Cir. 2001) (employer-sponsors as such do not have standing to assert claims under ERISA § 502(a)); *Garganigo v. Wyman-Gordon Co.*, Civ. A. No. 93-40042-NMG, 1994 WL 326621, *1 (D. Mass. June 16, 1994) ("civil enforcement provision of ERISA . . . empowers only participants, beneficiaries, fiduciaries and . . . the Secretary of Labor to bring suit in federal district court . . . [and] does not expressly provide for a private right of action by an employer"). Accordingly, any claims asserted on behalf of plan sponsors fail as a matter of law and must be dismissed.  In addition, Plaintiff is not himself a plan "administrator," could not have sustained the requisite injury in fact as an administrator, and therefore has no standing of any kind to assert claims on behalf of a class of plan administrators.  *See Warth v. Seldin*, 422 U.S. 490, 499 (1975) (standing under Article III of the Constitution requires "threatened or actual injury"); *Tucker v. Berkshire Life Ins. Co.,* No. 98-12575-MLW, 1999 WL 329727, *4 (D. Mass. May 19, 1999) (standing under Article III requires plaintiff to show an injury that is fairly traced to the challenged conduct, and that can be redressed by a favorable decision).

But more fundamentally, Plaintiff has no standing to represent any class of plan fiduciaries because ERISA does not authorize the fiduciary of one plan to pursue claims on behalf of other plans or other plan fiduciaries.  Fiduciary practices cannot be generalized from one plan to another especially in the context of fee and service arrangements.  After all, plans have different features, fee payments vary, and participant needs differ from plan to plan.  But even if fiduciary practices could be generalized, which they cannot, a private class action would

not be a permissible vehicle under ERISA through which to pursue generalized fiduciary claims. The statute does not allow private actors, either as class representatives or otherwise, to bring claims to enforce the fiduciary objectives of multiple fiduciaries.  Rather, ERISA contemplates that the Secretary of Labor, and not private attorneys general, shall broadly enforce the statute. *See* 29 U.S.C. § 1132; *see also* H.R. Conf. Rep. No. 93-1280 (1974), reprinted in 1974 U.S.C.C.A.N. 5038, 5188 ("enforcement of the fiduciary provisions [of ERISA] . . . primarily lie[s] with Secretary of Labor").  This is eminently appropriate, since the Secretary of Labor is charged with the public interest, whereas private actors, particularly fiduciaries of specific plans, cannot be expected to act on behalf of other fiduciaries who inevitably have interests particular to the circumstances of their own plans.  As one court has put it, permitting private plaintiffs to maintain ERISA actions on behalf of plans in which they have no interest, "would eviscerate the requirement of standing and invade the sphere of public enforcement delegated to the Secretary." *Lee v. Prudential Ins. Co. of America*, 673 F. Supp. 998, 1004 (N.D. Cal. 1987) (plaintiff lacked standing to assert claims on behalf of plans other than his own).

Another federal court has recently rejected a comparable attempt by the fiduciary of one plan to usurp the role of all fiduciaries of countless, unrelated plans.  In *Ruppert v. Principal Life Ins. Co.*, No. 06-CV-903-DRH, 2007 WL 2025233 (S.D. Ill. Jul 9, 2007), a plan fiduciary brought a purported class action asserting breach of ERISA fiduciary duty claims on behalf of a class that would include all employee benefit plans serviced by Principal Life Insurance Company ("Principal").  In his motion for reconsideration of a venue transfer order, plaintiff argued that venue in the Southern District of Illinois was proper because Principal services plans other than plaintiff's in that district, creating a sufficient nexus with the district to preclude venue transfer.  In denying the motion for reconsideration, the court held that "the total number of plans

serviced by Principal in the District and elsewhere" was "irrelevant" because plaintiff "lack[ed] standing to sue on behalf of plans of which he is not a fiduciary." *Id.* at *4. The court further observed that

> while Ruppert is a fiduciary of the Plan with standing to sue on behalf of the Plan, he does not have standing to sue on behalf of plans of which he is not a fiduciary. '[I]n order to have standing to sue under ERISA as a 'fiduciary,' . . . a party must be (or have been) not merely a fiduciary of any ERISA plan, but rather, a fiduciary of the particular plan victimized by the alleged breach or victimized by the alleged breach of fiduciary duty.'

*Id.* (internal citations omitted). This decision applies here. Plaintiff's status as the fiduciary of the Plan does not confer standing to assert ERISA claims on behalf of other fiduciaries of unrelated plans.

The *Ruppert* decision is consistent with courts in other contexts that have narrowly limited the standing of an ERISA fiduciary to assert claims only on behalf of the fiduciary's particular plan. For example, one court has held that trustees of a successor ERISA plan cannot bring suit against fiduciaries of a former plan because ERISA standing requires that "a party must be . . . not merely a fiduciary of any ERISA plan, but rather, a fiduciary of the particular ERISA plan victimized by the alleged breach of fiduciary duty." *Modern Woodcrafts, Inc. v. Hawley*, 534 F. Supp. 1000, 1014 (D. Conn. 1982) (dismissing claims). Others have held that former fiduciaries lack standing to assert claims on behalf of plans with which they no longer have any fiduciary relationship. *See, e.g., Chemung Canal Trust Co. v. Sovran Bank/Maryland*, 939 F.2d 12, 15 (2d Cir. 1991) (former fiduciary lacks standing to assert claims on behalf of a plan to which it is "a complete stranger"); *Blackmar v. Lichtenstein*, 603 F.2d 1306 (8th Cir.

1979) (same).[5]  In short, ERISA does not authorize the class claims that Plaintiff asserts here, and those claims must therefore be dismissed.

## **CONCLUSION**

For the foregoing reasons, John Hancock respectfully requests that this Court enter an Order granting its Motion to Dismiss Plaintiff's Class Action Complaint for Breach of Fiduciary Duty and dismissing Plaintiff's claims with prejudice.


Dated:   October 5, 2007                          Respectfully Submitted


                                                          /s/ James O. Fleckner
                                                  James O. Fleckner (BBO #641494)
                                                  Anthony M. Feeherry (BBO #160960)
                                                  John J. Cleary (BBO #086240)
                                                  Alison V. Douglass (BBO #646861)
                                                  GOODWIN PROCTER LLP
                                                  Exchange Place
                                                  Boston, MA  02109
                                                  Telephone:  (617) 570-1000
                                                  Facsimile:  (617) 523-1231

                                                  **Attorneys for Defendant**
                                                  **John Hancock Life Insurance Company (U.S.A.)**

---

[5] *See also Northeast Dept. ILGWU Health and Welfare Fund v. Teamsters Local Union No. 229 Welfare Fund*, 764 F.2d 147, 154 (3d Cir. 1985) (ERISA "contemplates 'fiduciaries' suing to enforce the terms of 'the plan,' meaning the terms of the plan regarding which they have a fiduciary duty"); *Sanofi-Synthelabo Inc. v. Eastman Kodak Co.*, No. 99 Civ. 4888, 2000 WL 1611068 (S.D.N.Y. Oct. 27, 2000) (plaintiff as fiduciary of its own plan lacked standing to bring suit for breach of fiduciary duty on behalf of a plan of which it was not a fiduciary); *Smith v. Hickey*, 482 F. Supp. 644 (S.D.N.Y. 1979) (plaintiffs lacked standing as "fiduciaries" under ERISA to sue on behalf of plan as to which they have no fiduciary relationship); *cf. Sonoco Prods. Co. v. Physicians Health Plan, Inc.*, 338 F.3d 366, 373 (4th Cir. 2003) (where a party has only certain fiduciary responsibilities with respect to the plan, it "only possesses standing to pursue actions under § 502(a) that are 'related to the fiduciary responsibilities it possesses'").

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on October 5, 2007.

_____/s/ James O. Fleckner_____
James O. Fleckner

LIBA/1828308

22