**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| JOHN P. CHARTERS, individually and on behalf of all others similarly situated, | : |
| | : |
| | : CIVIL ACTION |
| Plaintiff, | : No. 1:07-CV-11371-NMG |
| v. | : |
| | : |
| JOHN HANCOCK LIFE INSURANCE COMPANY (U.S.A.), | : |
| | : |
| Defendant. | : |
| | : |
| | : |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

**INTRODUCTION**

As traditional "defined benefit" pension plans have become increasingly rare, millions of Americans have had to pin their retirement hopes on 401(k) retirement plans. With these plans, there is no guaranteed payout. Instead, the investment return on 401(k) plan assets determines both when someone can retire and how much money they will receive in retirement. Fees charged by companies that manage 401(k) investments lower investment returns, and this reduction is compounded over time since each dollar of fees paid is a dollar that does not generate future investment returns. Accordingly, under the Employee Retirement Income Security Act of 1974 ("ERISA"), the firms entrusted with retirement funds are held to the highest fiduciary standards and are flatly prohibited from engaging in self-dealing at the expense of their clients. Plaintiff claims that Defendant violated these fiduciary duties by charging excessive fees and failing to pay additional fees received from third-party mutual funds to the Plan.

Plaintiff John P. Charters ("Plaintiff"), the trustee of the Charters, Heck, O'Donnell & Petrulis, P.C. 401 (k) Plan ("Plan"), has brought this suit on behalf of himself and others who are similarly situated, alleging that Defendant John Hancock Life Insurance Company ("Hancock" or "Defendant") breached its fiduciary duties under ERISA by charging excessive fees and accepting for its own benefit additional fees (known as "revenue sharing" payments) from third-party mutual funds, which were paid out of plan assets.

Plaintiff bought a variable annuity from Defendant with Plan Assets. Compl., ¶ 1. Defendant segregated the funds paid by the Plan to Defendant in a separate account (the "Separate Account") and invested the Separate Account in mutual funds selected by the Plaintiff from a menu of mutual fund options selected by Defendant. Compl. ¶ 11. The variable annuity contract provided that the Defendant would pay the Plan from the Separate Account an amount equal to the amount paid for the annuity, plus any investment gains and minus any investment losses and expenses (including all fees) on the amount held in the Separate Account. Compl., ¶ 15. As a result, if the investments in the Separate Account lost money because of poor investment performance or high fees, the amount of money that the Plan and Plan Participants would receive would be reduced.

Pursuant to the variable annuity contract, the amounts in the Separate Account are reduced to pay Hancock's fees for performing recordkeeping services, such as creating the Separate Account, accounts for each participant, and sub-accounts that aggregate participants' investments in each mutual fund, as well as for allocating contributions, accounting for transfers, accounting for gains, losses and charges, preparing confirmations of transfers and periodic statements. Compl., ¶ 33. In addition to all of

these fees for all of these services, Hancock *also* charges to the Separate Account annual fees from the mutual funds in each sub-account and an "administrative maintenance fee" of up to 50 to 75 basis points for "administering" the sub-accounts. Compl., ¶ 34-35.

In fact, Hancock performs no work "administering" the sub-accounts other than simply buying and selling shares of the sub-account's mutual fund. Compl., ¶ 38. A fee of up to 50 or 75 basis points for making an electronic purchase of shares is a staggering commission bearing no relationship to the amount of work performed. In fact, the administrative maintenance fee is simply an attempt to legitimize Defendant's receipt of revenue sharing payments from the mutual funds in which the assets in the Separate Account are invested.[1] All of the "revenue sharing payments" from mutual funds, and any "administrative maintenance fee" charged to the Separate Account, amount to compensation to Defendant wholly unrelated to any work Defendant performs on behalf of the Plan. Receipt of such excessive fees breaches Defendant's fiduciary duty of loyalty, and the receipt of payments from mutual funds is both a breach of the fiduciary duty of loyalty *and* a type of transaction specifically prohibited by ERISA.

The Complaint properly alleges (1) that Defendant is an ERISA fiduciary; (2) that ERISA fiduciaries owe a duty of loyalty and a duty not to engage in prohibited transactions; (3) that Defendant's charging of excessive fees unrelated to the services Defendant provided violates the duty of loyalty; (4) that Defendant's acceptance of

---

[1] The variable annuity contract provides that Hancock will reduce its administrative maintenance fee by any amounts that it receives from the mutual funds in each sub-account pursuant to any revenue sharing arrangement with the mutual funds. Compl., ¶ 41. However, as alleged in the Complaint, Hancock received Revenue Sharing Payments in excess of the amount by which it reduced the administrative maintenance fee or in excess of the entire administrative maintenance fee authorized by the Contract. Compl. ¶ 42. Since Defendant is fully compensated for the work it performed under the Contract through the Participant Fees and Asset Charges, any Revenue Sharing Payments paid to Defendant by mutual fund companies for investment of Plan Assets should have inured to the benefit of the Plan and not to the benefit of Defendant. Compl. ¶ 43.

revenue sharing payments from third-party mutual funds constituted breaches of the duty

of loyalty and a transaction specifically prohibited by ERISA; (5) that these breaches

caused losses to the Plan; and (6) damages.  Defendant's Motion to Dismiss effectively

concedes that all of these allegations are properly and sufficiently pled, except for the

first one:  Hancock's only argument is that it was *not* an ERISA fiduciary.  Under the

clear and unambiguous language of the statute and regulations, as well as decisions by

numerous courts, Defendant's argument is wrong.

Defendant's core argument is that it is not a fiduciary because it was merely a

"service provider" that provided minimal recordkeeping services to the Plan.  In making

this argument, Defendant mischaracterizes the basic nature of the relationship between

Defendant, the Plan and the Plan's trustee, as well as the specific allegations in the

Complaint.   A mere service provider does not exercise control over Plan Assets; it

simply keeps track of Plan assets held by a trustee.  Here, on the other hand, Defendant

has complete control over the sole plan asset (the right to be paid by Defendant under the

variable annuity contract all amounts credited to the Separate Account), and Defendant's

actions in question (accepting excessive fees; engaging in prohibited transactions)

directly impacted the value of that Plan Asset.  Under black letter ERISA law, as well as

all applicable Department of Labor ("DOL") opinions and regulations and case law, the

Separate Account is a Plan Asset and Defendant is a fiduciary because it exercised

authority or control over the management or disposition of that asset.[2]

---

[2] As discussed below, this is different from the situation where an insurance company or a bank
guarantees a particular return on investment.  In that situation, the insurance company or bank
bears the investment risk of a low or negative return on investments made with the deposited
funds.  Regardless of the performance of the investments, the depositor is entitled to be paid in
accordance with the contract.  Here, in contrast, the Plan is only entitled to receive the value of
the investments credited to the Separate Account.  If the investments do well, the Plan does well;

Finally, contrary to Defendant's argument, Plaintiff clearly has standing to assert its own claims, and may assert the claims of similarly situated purchasers of annuities under F.R.C.P. 23.

## ARGUMENT

Defendant's Motion to Dismiss rests on two arguments, each of which should be rejected.  Defendant erroneously argues that it is not a fiduciary under ERISA, and that Plaintiff lacks standing to bring this claim as a Class Action.

## I.   REGULATORY BACKGROUND

Congress established ERISA to "protect interstate commerce and the interests of participants in employee benefit plans and their beneficiaries" by, *inter alia,* "establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts."  29 U.S.C. § 1001(b).  ERISA provides that any person is a fiduciary, to the extent he or she "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets . . . ."  29 U.S.C. § 1002 (21)(A).

Fiduciaries are required to discharge their duties with respect to a plan "solely in the interest of the participants and beneficiaries" and "for the exclusive purpose of:  (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan."  29 U.S.C. § 1104(a)(1)(A).  In particular, a plan fiduciary is specifically prohibited from "deal[ing] with the assets of the plan in his own interest or for his own account" and "receiv[ing] any consideration for his own personal

if they do poorly, the Plan suffers.  Since the Plan bears all the risk, the assets in the Separate Account are treated as Plan Assets.

account from any party dealing with such plan in connection with a transaction involving the assets of the plan." 29 U.S.C. § 1106(b)(1) and (3). A fiduciary's breach of any of these duties results in liability. 29 U.S.C. § 1109(a). Participants, beneficiaries and fiduciaries are authorized to bring civil actions for such relief against those who breach their fiduciary duties under ERISA. 29 U.S.C. § 1132(a)(2).

## II.    DEFENDANT IS AN ERISA FIDUCIARY

Hancock is an ERISA fiduciary because it exercised authority or control respecting management or disposition of the Plan's assets because (1) it issued a variable annuity and (2) it exercised authority or control over the investment options offered through the annuity.

### A.  Defendant Is a Fiduciary With Respect to the Separate Account

Defendant is a fiduciary under ERISA because it exercised authority and control over the Separate Account. It is a bedrock principle of ERISA law that plan assets include annuity contracts issued by an insurance company where assets are held in a separate account. Insurance companies that issue these contracts are fiduciaries.

ERISA does not define the term "plan assets." However, regulations issued by the Department of Labor ("DOL") demonstrate that variable annuity contracts are plan assets and the insurance companies which issue these variable annuity contracts are fiduciaries:

> In general, an insurer is subject to ERISA's fiduciary responsibility provisions with respect to the assets of a separate account . . . to the extent that the investment performance of such assets is passed directly through to the plan policyholders. ERISA requires insurers, in administering separate account assets, to act solely in the interest of the plan's participants and beneficiaries; prohibits self-dealing and conflicts of interest; and requires insurers to adhere to a prudent standard of care.

29 CFR §2550.401c-1(d)(2)(c); *see also* 29 CFR 2510.3-101(h)(1)(iii) (plan assets include investment in a separate account of an insurance company).

The application of this regulation to Defendant is straightforward.  Defendant is an "insurer", since it is "an insurance company, insurance service, or insurance organization, qualified to do business in a State."  29 U.S.C. § 1101(b)(2)(A).  Defendant held the funds in a "separate account," which ERISA defines as "an account established or maintained by an insurance company under which income, gains, and losses, whether or not realized, from assets allocated to such account, are, in accordance with the applicable contract, credited to or charged against such account without regard to other income, gains, or losses of the insurance company."  29 U.S.C.  § 1002(17).  The Complaint alleges that the assets paid by the Plan to Defendant were held in a separate account, "an account maintained by Defendant, which is segregated from Defendant's general funds."  Compl., ¶11.  The investment performance of the Separate Account is passed directly through to Plan participants, since the Plan has the contractual right to be paid by Defendant the value of the Assets allocated to the Separate Account, net of gains, losses and fees chargeable to the account.  Compl., ¶15.  Accordingly, Defendant is a fiduciary with respect to those assets.

According to the DOL:  "The plan assets regulation imposes a 'look-through' rule based on the premise that, with certain exceptions, when a plan indirectly retains investment management services by investing in a pooled investment vehicle, the assets of the vehicle should be viewed as plan assets and managed according to the fiduciary responsibility provisions of ERISA."  DOL Advisory Opinion 2005-22A, Pens. Plan Guide (CCH) P 19,991G, 2005 WL 3751637 (Dec. 7, 2005).  Accordingly, "[u]nder this

regulation, once a plan acquires or holds an interest in a pooled separate account, all of

the assets of the separate account become plan assets." *Id.*

The legislative history of ERISA also demonstrates that Congress intended to

treat variable annuity contracts as plan assets, and considered insurance companies like

Hancock as plan fiduciaries:

> [I]t is understood that assets placed in a separate account managed by
> an insurance company are separately managed and the insurance
> company's payments generally are based on the investment
> performance of these particular assets. Consequently, *insurance
> companies are to be responsible under the general fiduciary rules
> with respect to assets held under separate account contracts, and the
> assets of these contracts are to be considered as plan assets* (but need
> not be held in trust).

Joint Explanatory Statement of the Committee of Conference, H.R. Rep. No. 93-1280,

93rd Con., 2d Sess. 296-97 (1974) (emphasis added). *See also* H.R. Rep. No. 93-1280,

reprinted in Vol. 3, 1974 U.S. Code Cong. & Adm News 4639, 5077 (the

"Report")(same).

Defendant's fiduciary status arises out of the fact that the Plan's return is directly

tied to the performance of the investments in the Separate Account. When a plan invests

assets with an insurer that guarantees a particular return, the risk of investment

performance is on the insurer, not the plan, and the assets are not plan assets. If the

insurer does not guarantee an investment return, however, then the risk of poor

investment performance falls on the plan, and the assets are plan assets to which the

insurer owes fiduciary duties. 29 U.S.C. § 1101(b)(2).[3]

---

[3] ERISA Section 401(b)(2) states: "In the case of a plan to which a guaranteed benefit policy is
issued by an insurer, the assets of such plan shall be deemed to include such policy, but shall not,
solely by reason of the issuance of such policy, be deemed to include any assets of such insurer."
29 U.S.C. § 1101(b)(2). A "guaranteed benefit policy" includes guaranteed benefits in a separate
account "but excludes any other portion of a separate account." 29 U.S.C. § 1101(b)(2)(B).

In *John Hancock Mutual Life Ins. Co. v. Harris Trust and Savings Bank*, 510 U.S. 86 (1993) (hereinafter *"Harris Trust"*), the trustee of an ERISA plan that had purchased a "participating group annuity" contract from John Hancock brought suit against John Hancock charging that certain assets held in John Hancock's general fund were plan assets. Though the contract between the parties guaranteed a certain level of return, the investments had performed well enough that there existed additional funds beyond this guaranteed return. The issue was whether these "free funds," as the Supreme Court referred to them, were plan assets, or whether they were "guaranteed benefits" under Section 1101(b)(2). The Supreme Court specifically found that because the plan bore the risk of poor investment performance on these "free funds," those funds did not fall within the 1101(b)(2)(B) exception and were, therefore, plan assets. *Harris Trust*, 510 U.S. at 95-96, 106. Thus, the Court concluded, John Hancock's actions in regard to the free funds "must be judged against ERISA's fiduciary standards." *Id.*[4]

---

Therefore, under the plain words of the statute, an insurance company is a fiduciary for any assets held in a separate account that are not "guaranteed."

This result holds true regardless of whether the assets are held in a separate account or co-mingled in an insurance company's general account. *See, e.g., Harris Trust* (assets kept in insurer's general account); Report at 5096 ("The conferees understand that it is a common practice for . . . insurance companies to maintain pooled investments funds for plans. . . . [Insurance companies] that operate such pooled investment funds are, of course, plan fiduciaries. As fiduciaries they must act, e.g., for the exclusive benefit of participants and beneficiaries."); DOL Advisory Opinion 78-8A, 1978 WL 5840 (March 13, 1978) ("Although CREF labels its account a 'general' account, it is the view of the Department of Labor (the Department) that the assets in the account which support obligations under variable annuity contracts issued to pension plans are plan assets" and CREF was therefore a plan fiduciary "by virtue of being persons who exercise any authority or control respecting the management or disposition of plan assets").

[4] *See also Trustees of the Southern California Bakery Drivers Security Fund v. Middleton*, 474 F.3d 642, 645-46 (9th Cir. 2007) (where trustee of pension plan sued entity providing insurance benefits, court deemed defendant to be a fiduciary because, "[W]here, as here, the exclusion in § 1101(b)(2) is inapplicable, all assets paid-in are treated as 'plan assets' and an entity that takes 'actions in regard to their management and disposition must be judged against ERISA's fiduciary standards") (citing *Harris Trust* at 106); *Peoria Union Stock Yards Co. Retirement Plan v. Penn*

The result in *Harris Trust* does not change regardless of whether the underlying investments are chosen by Plaintiff or Defendant.  In *Arakelian v. National Western Life Ins. Co.*, 724 F. Supp. 1033 (D.D.C. 1989), a plan and an annuity provider entered into a contract in which the plan required the annuity provider to invest in certain annuity contracts, so the annuity provider, like Defendant here, had no discretion to choose investments.  *Id*. at 1034.  Though the annuity provider guaranteed a minimum return on the investments, the amount of return above the minimum depended on market performance.  The court found the assets above the minimum to be plan assets, stating: "the variable part of the policy, and assets attributable thereto, are not considered guaranteed, and should be considered as plan assets subject to fiduciary rules."  *Id*. at 1036.

DOL Opinion Letter 93-22A, Pens. Plan Guide (CCH) ¶ 23,885R, 1993 WL 328550 (Aug. 24, 1993), is exactly on point.  There, the insurance company established a separate account pursuant to a group annuity contract with an ERISA plan, and the employer transferred plan assets to the insurance company.  The employer, however, directed the choice of investments through a group of investment advisors.  The employer

---

*Mutual Life Ins. Co.*, 698 F.2d 320, 326-27 (7th Cir. 1983) (finding that where plan trustee sued insurance company under an annuity contract, the insurance company was a fiduciary because investment results were not guaranteed); *Ferry v. Mutual Life Ins. Co. of New York*, 868 F. Supp. 764, 770 (W.D. Penn. 1994) (where trustees sued insurance company that issued a "guaranteed investment contract," court denied motion to dismiss because plaintiffs may be able to show that the contract "operated in such a manner that the amount of benefits was not guaranteed under these contracts," thus making defendant a fiduciary over plan assets); *Trustees of Laborers' Local No. 72 Pension Fund v. Nationwide Life Ins. Co.,* 783 F. Supp. 899, 910 (D.N.J. 1992) (stating that if an insurer breached an annuity contract with an ERISA plan, the plan would have an action for breach of fiduciary duty because, "[i]t is well established that an insurance contract issued to a plan is itself an asset of the plan. . . .") (*citing Mack Boring and Parts v. Meeker Sharkey Moffit*, 930 F.2d 267, 277 n. 20 (3d Cir. 1991)); *Fitzsimmons v. Old Security Life Ins. Co.*, 1977 WL 1057 at \*2 (N.D. Ill. 1977) (where the investment results were not guaranteed, the insurance company defendant was a fiduciary).

also bore the risk of poor investment performance and was required to keep a minimum amount of assets in the separate account. The payment of benefits under the annuity contract was not guaranteed. Consequently, the DOL opined that because "the amounts payable or credited to the Plan are affected by the investment performance of the separate account . . . the separate account and each of its underlying assets are plan assets."

DOL Opinion 97-16A, Pens. Plan Guide (CCH) ¶ 19,986O, 1997 WL 277979 (May 22, 1997) ("Op. 97-16A"), on which Defendant erroneously relies, also demonstrates this point. *See*, Memorandum in Support of Defendant's Motion to Dismiss Plaintiff's Class Action Complaint ("Def. Brief") at 13-14. There, Aetna Insurance Company ("Aetna") sought an opinion on the fiduciary status of one of its subsidiaries, Aetna Life Insurance and Annuity Company ("ALIAC"). ALIAC, among other things, provided recordkeeping services and investment options that were selected by "[p]lan fiduciaries who are independent of and unrelated to ALIAC." Op. 97-16A at 1. Based on these facts, the DOL concluded that ALIAC was a service provider, not a fiduciary.

Significantly, ALIAC offered as one of its services "group annuity contracts (GACs) issued by" another Aetna subsidiary, Aetna Life Insurance Company ("*ALIC*"). Op. 97-16A at 1. Presumably because ALIC issued the variable annuities, even Aetna "assumed that *ALIC*, an affiliate under common control with ALIAC, is a fiduciary with respect to the Plans by virtue of exercising authority or control over Plan assets invested in separate accounts maintained by *ALIC*." *Id*. at 5-6. (emphasis added).

Here, the Complaint clearly alleges that the value of the Separate Account depends only on the investment performance of the assets held in the account. Compl. ¶13. If the investments in the Separate Account do poorly, only the Plan will suffer.

Because no results were guaranteed by Defendant, the Separate Account is a Plan Asset, and Hancock is a fiduciary with respect to that Plan Asset.

### B. Defendant Is Also a Fiduciary By Virtue of Its Control Over Investment of the Separate Account

A separate and independent basis for finding that Defendant is a fiduciary is that Defendant exercised authority or control over investment of the funds in the Separate Account.  The Complaint alleges that Defendant (1) selected the menu of mutual fund options available to the Plan, and (2) had the right to substitute alternative mutual funds, trusts of portfolios for the mutual funds it offered.  Compl., ¶ 18.   This authority or control over plan assets renders Defendant a fiduciary.

In *Haddock v. Nationwide Fin. Services, Inc.,* 419 F. Supp. 2d 156 (D. Conn. 2006), the trustees of an ERISA retirement plan brought suit against Nationwide Life Insurance Company for accepting payments from mutual funds exactly like the payments at issue in this suit.  Although Nationwide, like Defendant here, claimed that it was just a "service provider" and not a fiduciary, Nationwide both selected the menu of funds from which Plaintiff could choose and could delete or substitute funds in its discretion.  *Id.* at 161.   Consequently, the Court found that "a reasonable jury could conclude that Nationwide exercises authority or control respecting disposition of plan assets by controlling which mutual funds are available investment options for the plans and participants." *Id.* at 166.  Additionally, the Court stated:

> The fact that Nationwide's control may be limited to deleting and substituting mutual funds from a list of funds approved by the Plans does not defeat the plaintiffs' claims. For example, if Nationwide removed as investment options all mutual funds that refused to share revenue with it, only those mutual funds that had agreed to make revenue-sharing payments would be available to the Plans and participants. Under those circumstances, which are

12

> consistent with the allegations of the fourth amended class complaint, there is a genuine issue whether Nationwide was exercising control or authority over the disposition of plan assets even if its control or authority was limited to deleting and substituting funds that were initially approved by the Plans.

*Id.* at 166, n.6.

Even though Defendant selected the menu of investment options from which Plaintiff could choose and "reserve[d] the right to substitute shares of another mutual fund, trust or portfolio thereof with similar investment objectives," Defendant argues that it had no discretionary control.  Def. Brief, at 12, quoting Contract.  Incredibly, Defendant argues that this clear language does not really mean what it says, and that the only "right" reserved by Defendant was – perhaps – the right to make polite suggestions to the trustees.  The other contract provisions Defendant cites give the trustees authority over investments.  However, Defendant ignores the fact that trustees are limited strictly to the investment menu chosen by Defendant and their investment choices are subject to Defendant's right to substitute.[5]  Defendant is, accordingly, in exactly the same position as the defendant in *Haddock,* and equally, must be considered an ERISA fiduciary.

Defendant's arguments simply make no sense because, if true, they would remove the protections that ERISA was designed to provide.  "To help fulfill ERISA's broadly protective purposes, Congress commodiously imposed fiduciary standards on persons whose actions affect the amount of benefits retirement plan participants will receive."

---

[5] At most – and this is a stretch – Defendant suggests there is some ambiguity in the extent of its reservation of right.  Such an argument, however, has no place in a Motion to Dismiss.  "[W]here the plain meaning of a contract phrase does not spring unambiguously from the page or from the context, its proper direction becomes one for the factfinder, who must ferret out the intent of the parties." *Global Software, Inc. v. DTX Software Brasil LTDA,* No. Civ. A.00-10033-GAO, 2002 WL 73819, *2 (D. Mass., Jan. 15, 2002) (quoting *RCI Northeast Servs. Div. v. Boston Edison Co.,* 822 F.2d 199, 202 (1st Cir.1987)).

*Harris Trust*, 510 U.S. at 96.   ERISA's standard of fiduciary care is the "highest known to the law."   *Donovan v. Bierwirth*, 680 F.2d 263, 272 n.8 (2d Cir. 1982).   Thus, Congress intended that the definition of fiduciary be broadly construed.  *Frommert v. Conkright*, 433 F.3d 254, 271 (2d Cir. 2006).

If Defendant were correct in arguing that it is not a fiduciary, then Defendant would be shielded from liability if it mishandled the assets in its care – for example, by placing the assets in the wrong investments, or investing the improper amounts, or failing to credit the plan with any investment gains, or misallocating plan assets to another of Defendant's clients.   These types of breaches of fiduciary duty can and do occur, and those who handle plan assets must face liability when they do.  *See, e.g., Tybout v. Karr Barth Pension Administration*, 819 F. Supp. 371 (D. Del. 1993) (action against insurance company for failure to transfer assets to the correct account).   Therefore, because Defendant had authority and control over assets of the Plan, it is a fiduciary.

## II.   PLAINTIFF HAS STANDING TO ASSERT A CLASS ACTION

Plaintiff may properly bring identical ERISA claims on behalf of itself and the members of the Class because Plaintiff has individual standing and otherwise satisfies the requirements of Rule 23.   Hancock's arguments to the contrary are without merit.

Plaintiff – as Hancock concedes – is a fiduciary of the Plan and has statutory standing to bring ERISA claims with respect to its Plan.  D.Mem. at 15.[6]  Following from

---

[6] It bears noting that Hancock has not moved to dismiss pursuant to Rule 12(b)(1) for lack of standing.  Hancock concedes that Plaintiff has standing as a fiduciary to sue on behalf of the Plan. D. Mem. at 15; *see also* ERISA § 502(a)(2) and (3), 11 U.S.C. § 1132(a)(2) and (3) (conferring standing on the Secretary of Labor, plan participants, beneficiaries and *fiduciaries*).  Where a plan sponsor acts as a plan fiduciary pursuant to ERISA's functional definition for "fiduciary," it may – like a plan trustee – bring claims as a fiduciary under ERISA § 502(a)(2) and (3), 11 U.S.C. § 1132(a)(2) and (3).

this concession, Plaintiff need only satisfy the requirements of Rule 23 in order to prosecute the claims on behalf of the proposed Class, *i.e.*, other fiduciaries and their respective plans.  Such a representative action is not only specifically contemplated by Rule 23 and ERISA but has been approved by numerous courts.

For example, the Second Circuit recently held that beneficiaries and trustee-fiduciaries of employer-sponsored plans who brought suit for violations of ERISA's fiduciary duties on behalf of a class of all other similarly situated employer-sponsored plans had the requisite standing to seek relief on behalf of other fiduciaries, beneficiaries and a class of their employer-sponsored plans because the defendant had similarly contracted with every plan and breached its ERISA fiduciary duties with respect to each such contractual arrangement.  *Central States Southeast and Southwest Areas Health and Welfare Fund v. Merck-Medco Managed Care L.L.C.*, __ F.3d __, No. 04-3300-cv, 2007 WL 3033489, at *9 (2d Cir., Oct. 3, 2007).[7]

The Second Circuit's decision accords with other Court of Appeal decisions which have similarly applied Rule 23 to ERISA § 502 claims.  In *Fallick v. Nationwide Mut. Ins. Co.,* 162 F.3d 410 (6th Cir. 1998), for example, the Sixth Circuit dealt with fiduciary breach claims against the fiduciaries of several ERISA plans.  Fallick was a

---

[7] While the plaintiffs in *Merck-Medco* were plan beneficiaries and fiduciaries, the Supreme Court has  approved the certification of a class of plans because claims for fiduciary breaches can only be brought on behalf of plans:

> [R]ecovery for a violation of § 409 inures to the benefit of the plan as a whole.  We find this contention supported by the text of § 409, by the statutory provisions defining the duties of a fiduciary, and by the provisions defining the rights of a beneficiary.

*Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 140 (1985); *see also id.* at 142 n.9 (stating that Congress intended that "actions for breach of fiduciary duty be brought in a representative capacity on behalf of the plan as a whole").

member of only one of these plans and alleged that the fiduciaries used an improper

methodology to determine benefits in all of the plans they administered. *Id.* at 411-12.

The district court dismissed Fallick's claims against plans other than his own, and the

Sixth Circuit reversed, holding that:

> [A]n individual in one ERISA benefit plan can represent a
> class of participants in numerous plans other than his own,
> if the gravamen of the plaintiff's challenge is to the general
> practices which affect all of the plans.
>
>                                      . . . .
>
> [C]ourts have recognized that the standing-related
> provisions of ERISA were not intended to limit a
> claimant's right to proceed under rule 23 on behalf of all
> individuals affected by the challenged conduct, regardless
> of the representative's lack of participation on all the
> ERISA-governed plans involved.
>
>  . . . .
>
> [O]nce a potential ERISA class representative establishes
> his individual standing to sue his own ERISA-governed
> plan, there is no additional constitutional standing
> requirement related to his suitability to represent the
> putative class of members of other plans to which he does
> not belong.

*Id.* at 422, 423, 424 (citations omitted).

Similarly, in *Forbush v. J.C. Penney Co., Inc.*, 994 F.2d 1101 (5th Cir. 1993) – a

case on which *Fallick* relied – plaintiff Forbush sought class certification on behalf of

four ERISA plans, alleging that the defendants used an improper method for calculating

social security benefits. Although Forbush was a participant in only one plan, the Fifth

Circuit found that Forbush's claim presented issues common to members of all four

ERISA plans, and her claim was typical of those challenging the defendants' general

practice. *Forbush*, 994 F.2d at 1106.

The reasoning of these Circuit Courts was adopted by Judge Saris in *Alves v.*

*Harvard Pilgrim Health Care, Inc.*, 204 F. Supp. 2d 198 (D. Mass. 2002). In *Alves*,

participants of certain ERISA plans brought suit against a fiduciary-sponsor of numerous

ERISA plans which charged participants a "copayment" for certain prescription drugs

that sometimes exceeded its own per-unit costs because of discounting arrangements with

prescription drug providers.  *Id.* at 202.  Quoting *Fallick* and citing *Forbush*, Judge Saris

reasoned that:

> When a single defendant offers a range of ERISA plans, an
> individual in one plan can represent a class of plaintiffs –
> including some belonging to other plans – as long as "the
> gravamen of the plaintiffs challenge is to the general
> practices [of the defendant] which affect all of the plans."

*Id.* at 205 (alterations in original) (quoting *Fallick,* 162 F.3d at 422).  Judge Saris then

explained that because the plaintiffs were participants in some of the plans and the

copayment plan provisions were substantially the same among all of the plans, the

plaintiffs were authorized to bring claims on behalf of participants in foreign plans for

which the plaintiffs did not have standing since "a single resolution of the dispute would

be expeditious."  *Id.* at 205.

The holdings of *Merck-Medco, Fallick, Forbush, Alves* and others[8] apply equally

here:  a claimant with standing to bring suit on behalf of one plan may represent

claimants "in numerous plans other than his own, if the gravamen of the plaintiff's

challenge is to the general practices which affect all of the plans." *Fallick* at 422.  Here,

Plaintiff alleges that Hancock maintained a similar contractual and fiduciary relationship

with numerous plans and breached its fiduciary duty of loyalty to each such plan by

uniformly putting its interest first and pocketing money which rightfully belonged to the

---

[8] *See also Rawls v. Unum Life Ins. Co.*, 219 F. Supp. 3d 1063, 1067 (C.D. Cal. 2002) (plaintiff
had standing to assert class claim for participants in several different ERISA plans), and *Sutton v.
Med. Serv. Ass'n of Pa.*, No. CIV. A. 92-4787, 1993 WL 273429, at *5 (E. D. Pa. 1993) (same).

plans and their retirees. Thus, "the gravamen of the plaintiff's challenge is to the general practices which affect all of the plans."[9]

Hancock also argues that the misconduct alleged here "cannot be generalized from one plan to another." D.Mem. at 18. This is incorrect. The scheme alleged here is plainly uniform: it involves the same relationship between Hancock and each of the other plans that comprise the class and the same breach by Hancock in accepting revenue sharing payments without a corresponding reduction of its fees to the Plan. The only variation among class members would be the amount of damages. Simply put, this case presents the paradigmatic example of a class action. Indeed, the Advisory Committee Notes accompanying the 1966 amendment to Rule 23 specifically state that certification is appropriate in cases charging breach of trust by a fiduciary to a large class of beneficiaries, and Congress embraced the use of representative actions to enforce ERISA. *See Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 n.9 (1985) (noting Congress' clearly expressed intent that ERISA "actions for breach of fiduciary duty be brought in a representative capacity on behalf of the plan as a whole").[10]

---

[9] Hancock relies heavily on *Ruppert v. Principal Life Ins. Co.*, No. 06-cv-906, 2007 WL 2025233 (S.D. Ill., July 9, 2007), for the proposition that a fiduciary of one plan cannot "usurp the role of all fiduciaries of countless, unrelated plans." D.Mem. at 19-20. *Ruppert* – which dealt with a motion for reconsideration of a transfer of venue decision – failed to address the plaintiff's Rule 23 right to represent a class of similarly situated claimants and held without any analysis that Ruppert "does not have standing to sue on behalf of plans of which he is not a fiduciary." *Id.* at 4. Accordingly, *Ruppert* (and the cases like it that fail to address the applicability of Rule 23 to breach of fiduciary duty claims) are simply irrelevant.

[10] Numerous courts have certified for class treatment claims brought against ERISA fiduciaries for breaching their general fiduciary duties. *See, e.g., In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 451 (S.D.N.Y. 2004); *In re WorldCom, Inc. ERISA Litig.*, No. 02-4816, 2004 WL 2211664 (S.D.N.Y. Oct. 4, 2004); *In re Syncor ERISA Litig.*, 227 F.R.D. 338 (C.D. Cal. 2005); *In re CMS Energy ERISA Litig.*, 225 F.R.D. 539 (E.D. Mich. 2004); *In re Ikon Office Solutions, Inc.*, 191 F.R.D. 457 (E.D. Pa. 2000).

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss.  The Complaint properly alleges a cause of action against Defendant for breach of fiduciary duty under ERISA and Plaintiff clearly has standing to bring a class action for this breach.

## REQUEST FOR ORAL ARGUMENT

In accordance with Local Rule 7.1(d), Plaintiff requests the opportunity to present oral argument.

**Plaintiff, John P. Charters**

By /s/ Thomas G. Shapiro
Thomas G. Shapiro BBO #454680
Michelle H. Blauner BBO# 549049
**SHAPIRO HABER & URMY LLP**
53 State Street
Boston, MA 02109
Telephone: (617) 439-3939
Facsimile: (617) 439-0134

Robert A. Izard
Jeffrey S. Nobel
Mark P. Kindall
**SCHATZ NOBEL IZARD, P.C.**
20 Church Street, Suite 1700
Hartford, CT 06103
Telephone: (860) 493-6292
Facsimile:  (860) 493-6290

Ronen Sarraf
Joseph Gentile
**SARRAF GENTILE LLP**
485 Seventh Avenue, Suite 1005
New York, NY 10018
Telephone: (212) 868-3610
Facsimile: (212) 918-7967

**Attorneys for Plaintiff and the Class**

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on the 16th day of November, 2007.

By:  /s/  Susan Geresy_____