UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN P. CHARTERS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>JOHN HANCOCK LIFE INSURANCE COMPANY (U.S.A.)<br><br>Defendant. | CIVIL ACTION<br>No. 1:07-cv-11371-NMG |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT**

**INTRODUCTION**

Nothing in Plaintiff's opposition (the "Opposition" or "Opp.") saves his Complaint from dismissal because this action is flawed in two fundamental ways. First, Plaintiff ignores the limits on the definition of fiduciary under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), and incorrectly asserts that John Hancock Life Insurance Company (USA) ("John Hancock") acted as a fiduciary by (a) offering a platform of investment options from which Plaintiff selected, (b) providing ministerial recordkeeping services, and (c) receiving a contractual rate of compensation. Second, Plaintiff also ignores limits on fiduciary standing under ERISA's enforcement provisions and erroneously claims that, as the fiduciary of one plan, he has standing to sue on behalf of a class of fiduciaries of plans with which he has no relationship. Thus, and for the reasons argued in Defendant's Memorandum in Support of its Motion to Dismiss ("Moving Brief"), the Complaint must be dismissed in its entirety. Should any part of the Complaint survive, the class allegations must, at a minimum, be dismissed.

I.   **John Hancock Is Not an ERISA Fiduciary to the Plan with Respect to the Conduct Challenged in the Complaint, Namely, Its Receipt of Compensation.**

   A.   **John Hancock is Not an ERISA Plan Fiduciary *a Fortiori* by Virtue of Its Issuance of a Variable Annuity Contract.**

Plaintiff argues that John Hancock is an ERISA fiduciary because it issued a variable annuity contract (the "Contract") to the Charters, Heck, O'Donnell & Petrulis, P.C. 401(k) Plan (the "Plan"), custodies Plan assets under the Contract, and as a result *could* misappropriate those assets. *See* December 7, 2007 hearing transcript at 20-21 (submitted herewith as Exhibit A) ("they have the money . . . [t]hey can either give it to us or not give it to us"). The preposterous notion that insurance companies that hold assets under group annuity contracts would be fiduciaries *a fortiori* is completely inconsistent with ERISA's definition of fiduciary. Courts have consistently held that the mere issuance of a variable annuity contract is not a fiduciary act: "Sell[ing] its insurance products to the plan . . . does not render an insurer . . . a fiduciary." *Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1279 (11th Cir. 2005). *See also, e.g., Santana v. Deluxe Corp.*, 920 F. Supp. 249, 256-57 (D. Mass. 1996) ("urging the purchase of an insurance company's plan services does not make that company a fiduciary with respect to those services"); *United Centrifugal Pumps v. Schotz*, No. C-89-2291 FMS, 1991 WL 274232, at *5 (N.D. Cal. June 12, 1991) ("[s]elling policies to an ERISA plan does not turn an insurance company into a fiduciary to the plan").

These decisions are fully consistent with First Circuit authority which clearly directs that fiduciary status for any entity – including insurers – turns on the possession or exercise of discretionary authority or control over plan assets. As the First Circuit has held, "the mere exercise of physical control" over assets "is insufficient to confer fiduciary status." *Beddall v. State Street Bank and Trust Co.,* 137 F.3d 12, 18 (1st Cir. 1998) (affirming dismissal). *See also*

*O'Toole v. Arlington Trust Co.*, 681 F.2d 94, 96 (1st Cir. 1982) (bank that was depository for pension funds was not a fiduciary within the meaning of ERISA where responsibilities did not include discretionary or advisory activities); *Cottrill v. Sparrow, Johnson & Ursillo, Inc.*, 74 F.3d 20, 21-22 (1st Cir. 1996) (partner in partnership through which plan assets were invested was not an ERISA fiduciary where he did not exercise any discretionary authority or control).[1] Plaintiff does not attempt to distinguish this controlling authority, nor could he.

Instead, Plaintiff raises a red herring, arguing at length that the definition of "plan assets" under ERISA includes the assets held in a John Hancock separate account. (Opp. at 6-12.) John Hancock does not dispute that the assets it custodies under the Contract are plan assets. This fact alone does not support the conclusion that John Hancock is a fiduciary of the Plan with respect to the matters that are the subject of Plaintiff's Complaint. It is clear from the Complaint and the parties' Contract that John Hancock generally does not manage assets for the Plan, but "merely purchases shares of a mutual fund managed by others" in strict accordance with participant elections. Compl. ¶ 37. It is also clear that Plaintiff, and not John Hancock, selected the particular investment options that are available to participants. *See* Contract Proposal, Appendix B to the Motion ("App. B") at 1. John Hancock exercises no discretion with respect to the administration of the Plan: it is required under the Contract to "accept contributions" and "invest [them] . . . in accordance with the provisions and conditions of th[e] Contract." (Contract,

---

[1] In *Beddall*, the First Circuit recognized that ERISA's fiduciary provisions are "somewhat narrow" and "designed to avoid [] incremental costs." 137 F.3d at 21. Indeed, the First Circuit has expressly declined to create new, expansive theories of ERISA liability, noting that the Supreme Court has cautioned "scrupulous regard for the delicate balance Congress struck in enacting ERISA" between its "desire to offer employees enhanced protection for their benefits [and] its desire not to create a system that is so complex that administrative costs, or litigation expenses, unduly discourage employers from offering . . . benefit plans in the first place." *Vartanian v. Monsanto Co.*, 131 F.3d 264, 269-70 (1st Cir. 1997). *See also Watson v. Deaconess Waltham Hosp.*, 298 F.3d 102, 113 (1st Cir. 2002) (rejecting additional remedies for disclosure violations because they could increase costs).

3

Appendix A to the Motion ("App. A") at 1.)[2] Like the defendant in *Cottrill*, John Hancock is merely the "'vehicle' for the investment . . . but it is the driver, not the vehicle, that chooses the route." *Cottrill*, 74 F.3d at 22. The cases upon which Plaintiff relies in which insurance companies served as asset managers (and hence plan fiduciaries) are therefore inapposite. *Compare*, *e.g.*, *John Hancock Mutual Life Ins. Co. v. Harris Trust and Savings Bank,* 510 U.S. 86, 104 (1993) (insurer vested with "discretionary management of assets" and "contract's aggregate value depended upon the insurer's success as an investment manager").

Lacking a basis in fact or law, Plaintiff offers only speculation, arguing that John Hancock is a fiduciary because it could harm the Plan by refusing to pay Plaintiff the money invested in the Plan. *See* December 7, 2007 hearing transcript (Ex. A) at 20-21. While such misconduct *could* give rise to fiduciary liability by virtue of an actual exercise of authority or control over plan assets (or otherwise subject John Hancock to an action for conversion or imposition of a constructive trust), no such actual misconduct is alleged here. This deficiency is fatal to Plaintiff's claims. Indeed, if Plaintiff's theory of liability were correct, First Circuit cases like *Beddall, O'Toole* and *Cottrill* were wrongly decided, because in each of those cases the entity actually holding plan assets could conceivably have converted those assets.

The Third Circuit decision in *Srein v. Frankford Trust*, 323 F.3d 214, 221 (3d Cir. 2003) illustrates this point. *Srein* held that where a bank allegedly distributed proceeds of an insurance policy to the wrong customer, it was a fiduciary by virtue of actually exercising control in the absence of any direction to make such a distribution. *Id.* at 221. In so holding, the *Srein* court expressly distinguished the numerous cases such as *Beddall* and others that have properly held

---

[2] These uncontested documents refute the argument that John Hancock "selected the menu of mutual fund options available to the Plan." (Opp. at 12.) *See Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co.*, 228 F.3d 24, 32 (1st Cir. 2000) (written instrument "trumps" contradictory allegations in the complaint).

4

that service providers were not fiduciaries where they "performed no more than administrative responsibilities at the direction of a plan trustee." 323 F.3d at 223. Here, there is no allegation whatsoever that John Hancock did anything other than perform administrative tasks as directed by Plaintiff and the Plan participants in accordance with the Contract. Consistent with *Beddall*, John Hancock is simply not an ERISA fiduciary with respect to the directed activity contained in its Contract.[3]

### B. John Hancock's Limited Right to Substitute Does Not Give Rise to Fiduciary Status.

In addition to arguing that John Hancock is *a fortiori* an ERISA fiduciary by virtue of its custody of Plan assets, Plaintiff argues that John Hancock's limited right "to substitute alternative mutual funds, trusts or portfolios for the mutual funds it offers" also gives rise to fiduciary authority. (Opp. at 12.) But this argument fails as well. The substitution clause referred to by Plaintiff was part of the contract offering that Plaintiff selected for his Plan. The unambiguous language of the Contract states that John Hancock merely reserves the right to update its product by replacing the existing mutual fund in a sub-account with an alternative with "similar investment objectives;" all power to ultimately decide which investment option (and underlying mutual funds) are available under the Plan is retained by Plaintiff. (App. A, Contract,

---

[3] Indeed, Plaintiff does not even attempt to address the host of authority cited by John Hancock in its Moving Brief at 15 that holds that a party is not a fiduciary for purpose of deciding what price to charge for its product and services. Plaintiff's one last ditch attempt to save his Complaint by alleging an action arguably inconsistent with the Contract also fails. The Complaint alleges in cursory fashion, upon "information and belief," that John Hancock "received Revenue Sharing Payments in excess of the amount by which it reduced the administrative maintenance fee or in excess of the entire administrative maintenance fee authorized by the Contract." (Compl. ¶ 42.) John Hancock categorically denies this unsupported allegation. But even if this unsupported allegation is accepted as true for purposes of this motion, it does not save a wide-ranging putative class action challenging the propriety under ERISA's fiduciary standards and prohibited transaction rules of all administrative maintenance charges applied to all funds held by all plans record kept by John Hancock. At most, such an allegation (if it had any factual support, which it does not), would only support a very narrow duty on John Hancock to the extent of any payment for a specific fund for a specific client over which John Hancock exercised authority or control that was not authorized by the relevant agreement or direction, and not the expansive obligations being asserted in the Complaint. Accordingly, because Plaintiff greatly overreaches, this Complaint must be dismissed.

5

at Separate Account Riders B-E.)  Indeed, the Department of Labor ("DOL") has expressly advised that such a reservation of substitution rights by a recordkeeper does not render it a fiduciary where the plan's independent fiduciaries (here, Plaintiff) will receive notice of any changes.  *See* DOL Adv. Op. 97-16A (May 22, 1997) (the "Aetna Letter").  The Aetna Letter procedures, sanctioned by the DOL, allow providers such as John Hancock to update their product to introduce innovative and quality investment options on the platform, while allowing plan fiduciaries an opportunity to respond to a proposed substitution by (a) changing providers if they are dissatisfied with the proposed change, or (b) negotiating an alternate arrangement with the existing provider.  *Id*.  There is nothing in the record to indicate that Plaintiff did not have available to it the same remedies.  Moreover, Participants could always choose not to invest in a substituted option:  the Contract requires that contributions are to be invested "only in the Investment Options selected by [Plaintiff]."  (App. A at, ¶ 3.)

The district court decision on summary judgment in *Haddock v. Nationwide Fin. Servs., Inc.*, 419 F. Supp. 2d 156 (D. Conn. 2006), upon which Plaintiff places great reliance, is not dispositive.  Indeed, *Haddock* is not binding on this Court – the District of Connecticut opinion is based on Second Circuit authority such as *Blatt v. Marshall & Lassman*, 812 F.2d 810 (2d Cir. 1987), a case which held that the term fiduciary should be "broadly construed" and that "an entity need not have absolute discretion with respect to a benefit plan in order to be considered a fiduciary."  *Haddock*, 419 F. Supp. 2d at 164, 166 (quoting *Blatt*).  To the contrary, the First Circuit has expressly held that ERISA's fiduciary provisions are "somewhat narrow" and "designed to avoid [] incremental costs," because such increased costs ultimately could negatively impact participants.  *See supra* note 1.  And in *Cottrill*, this circuit stated flatly that "discretion is a *sine qua non* of fiduciary duty."  74 F.3d at 22.  Indeed, Judge Ponsor has

criticized *Blatt* as "unnecessarily broad." *Toomey v. Jones*, 855 F. Supp. 19, 25 n.2 (D. Mass. 1994). In light of the relevant First Circuit authority, the Aetna Letter allowing insurers to reserve the right to substitute without incurring fiduciary status, and the complete lack of any allegation that John Hancock failed to comply with the Aetna Letter procedures, the Complaint must be dismissed for its failure to state a claim that is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007); *see id*. at 1965 ("Factual allegations must be enough to raise a right to relief above the speculative level."). As the Court stated in *Twombly*: "a district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed." *Id.* at 1974.

      Plaintiff's attempt to analogize John Hancock's role to that of the one Aetna entity (ALIC) that was deemed a fiduciary in the Aetna Letter also is of no avail. The Aetna Letter makes clear that ALIC served as asset manager of certain of the investment options in which plan assets were invested. *Id.* at 5-6. The function that is at issue here – John Hancock charging fees for recordkeeping accounts that hold unrelated mutual funds – is not the function performed by the ALIC entity in the Aetna Letter. Even if John Hancock is a fiduciary with respect to John Hancock-managed investment options on the Plan's menu, ERISA is clear that acting as a fiduciary for one limited purpose (e.g., the management of assets of an investment option) does not render one a fiduciary for all purposes (e.g., the selection of the investment options to be made available). *Beddall,* 137 F.3d at 18 ("fiduciary status is not an all or nothing proposition" but rather "arises in specific increments correlated to the vesting or performance of particular fiduciary functions").[4] Thus, because Plaintiff's claims do not relate to John Hancock's limited management of discrete assets within an investment options, this argument fails.

---

[4]   Indeed, the caselaw is clear that an entity may wear "two hats" and act in a limited fiduciary role in one capacity and take other actions in a non-fiduciary role that fall outside of ERISA's provisions. *See In re Luna*, 406 F.3d

7

**II.     Plaintiff Has No Standing to Assert Claims on Behalf of a Class of Fiduciaries.**

Plaintiff's Opposition also asks the Court to leapfrog the issue of Plaintiff's lack of standing to assert his class claims and find that Plaintiff "otherwise satisfies the requirements of Rule 23." (Opp. at 14.)  Standing, however, is a "threshold" inquiry; a "plaintiff may not avoid the standing inquiry merely by styling his suit as a class action." *Forsythe v. Sun Life Fin., Inc.*, 417 F. Supp. 2d 100, 119 (D. Mass. 2006) (O'Toole, J.) (dismissing claims for lack of class standing as to mutual funds in which plaintiff was not a shareholder); *see also In re Bank of Boston Corp. Sec. Litig.*, 762 F. Supp. 1525, 1531 (D. Mass. 1991) (Harrington, J.) ("a federal district court may not permit a plaintiff to circumvent the standing requirement simply because the plaintiff files his suit as a class action").  "Thus, when the issue of standing is raised by a party, the Court must resolve that issue *before* considering the class certification requirements under Rule 23." *Id.*[5]

As such, Plaintiff's attempt to distinguish *Ruppert v. Principal Life Ins. Co.,* No. 06-CV-903-DRH, 2007 WL 2025233 (S.D. Ill. Jul 9, 2007), on the ground that *Ruppert* did not address Rule 23 considerations is of no avail.  Conforming to the approach endorsed in this district, the *Ruppert* court addressed the plaintiff's lack of standing to sue on behalf of a class of other ERISA plans' fiduciaries *before* reaching any Rule 23 inquiry, finding that the plaintiff "does not have standing to sue on behalf of plans of which he is not a fiduciary." *Id.* at *4.  The same conclusion is required here.

---

1192, 1202 n.8 (10th Cir. 2005) (unlike the law of trusts, "the trustee under ERISA may wear different hats"); *Johnson v. Georgia-Pacific Corp.*, 19 F.3d 1184, 1188 (7th Cir. 1994) (under ERISA "people may be fiduciaries when they do certain things but be entitled to act in their own interests when they do others"); *Vartanian v. Monsanto Co.*, 880 F. Supp. 63, 69 (D. Mass. 1995) ("no violation of ERISA occurs when an employer merely conducts business that is not regulated by ERISA").

[5]   *See also In re Salomon Smith Barney Mut. Fund Fees Litig.*, 441 F. Supp. 2d 579, 607 (S.D.N.Y. 2006) (standing determination would precede that of class certification); *Badillo v. Central Steel & Wire Co.,* 495 F. Supp. 299, 305 (D. Ill., 1980) ("the fact that lack of standing is a jurisdictional defect under Article III militates against deferring the Court's determination on that score to a later submission on class certification").

Not only is it appropriate for the Court to address Plaintiff's standing to bring a class action at this juncture (if it denies the motion to dismiss the Complaint entirely for lack of relevant ERISA fiduciary status), but the Court must dismiss the class claims. Plaintiff does not, and cannot, point to a single case in this Circuit or elsewhere where a court has ruled that a trustee, as fiduciary of one plan, has standing to assert claims on behalf of other trustee-fiduciaries of other plans against a defendant who provided services to those unrelated plans.

Plaintiff relies principally upon cases in which individual participants and beneficiaries have been permitted to assert claims on behalf of participants and beneficiaries of other plans. (Opp. at 15–17 (citing *Forbush v. J.C. Penney Co., Inc.,* 994 F.2d 1101 (5th Cir. 1993) and *Fallick v. Nationwide Mut. Ins. Co.,* 162 F.3d 410 (6th Cir. 1998))). These cases are of no avail because fiduciaries (such as Plaintiff and the proposed class members) stand in a very different stead than the individual participant and beneficiary claimants in those cases. As Plaintiff recognizes, "[f]iduciaries are required to discharge their duties with respect to a plan 'solely in the interest of the participants and beneficiaries'" (Opp. at 5), and are subject to numerous other duties in their fiduciary role. This applies to Plaintiff as trustee and fiduciary of his Plan. Thus, Plaintiff's own argument shows the distinction between fiduciaries and participants. Fiduciaries simply cannot usurp the role entrusted to other fiduciaries of other plans to protect the interests of participants in those other plans, even if some courts have allowed some participants to stand in the shoes of other participants.[6]

Accordingly, not only does Plaintiff lack standing to sue on behalf of sponsors and administrators because he is neither, but he also lacks standing to sue on behalf of other trustees

---

[6] The Second Circuit's decision in *Central States Southeast and Southwest Areas Health and Welfare Fund v. Merck-Medco Managed Care L.L.C.* is also unsupportive of Plaintiff's position. *Central States* only addressed whether the plaintiff fiduciary had standing to represent the plan as to which she was a fiduciary – a matter not at issue here – and not whether she also had standing to represent a class of other fiduciaries of unrelated plans. No. 043300-cv, 2007 WL 3033489, *242 (2d Cir., Oct. 3, 2007). The case, therefore, is inapplicable.

of other plans. Such a result does not leave a gap in the industry-wide enforcement of ERISA because the statute authorizes the Secretary of Labor, not fiduciaries with varying interests, to enforce the statute on behalf of all plans. *See Lee v. Prudential Ins. Co. of America*, 673 F. Supp. 998, 1004 (N.D. Cal. 1987) (permitting private plaintiffs to maintain ERISA actions on behalf of plans in which they have no interest "would eviscerate the requirement of standing and invade the sphere of public enforcement delegated to the Secretary").

## CONCLUSION

For the foregoing reasons, and the reasons set forth in the Moving Brief, Plaintiff's Class Action Complaint must be dismissed with prejudice.

Dated: December 17, 2007                                        Respectfully Submitted,

       /s/ James O. Fleckner
James O. Fleckner (BBO #641494)
Anthony M. Feeherry (BBO #160960)
John J. Cleary (BBO #086240)
Alison V. Douglass (BBO #646861)
GOODWIN PROCTER LLP
Exchange Place
Boston, MA  02109
Telephone:  (617) 570-1000
Facsimile:  (617) 523-1231
jfleckner@goodwinprocter.com
afeeherry@goodwinprocter.com
jcleary@goodwinprocter.com
adouglass@goodwinprocter.com

**Attorneys for Defendant
John Hancock Life Insurance Company (U.S.A.)**

1849657

## **CERTIFICATE OF SERVICE**

      I, James O. Fleckner, counsel for Defendant John Hancock Life Insurance Company (U.S.A.), hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on December 17, 2007.

                                                          /s/ James O. Fleckner
                                                             James O. Fleckner