```
                  United States District Court
                    District of Massachusetts
_____
                                )
JOHN CHARTERS,                  )
        Plaintiff,              )
                                )
        v.                      )   Civil Action No.
                                )   07-11371-NMG
JOHN HANCOCK LIFE INSURANCE CO.,)
        Defendant.              )
                                )
                                )
                                )
_____ )
```

**MEMORANDUM & ORDER**

**GORTON, J.**

The plaintiff, John P. Charters ("Charters") alleges violations of the Employment Retirement Income Security Act of 1974, 29 U.S.C. § 1002 et seq., ("ERISA") on behalf of the 401(k) plan for which he is a trustee and on behalf of all trustees, sponsors and administrators of all "employment benefit plans" under ERISA that owned variable annuity contracts from the defendant, John Hancock Life Insurance Company ("Hancock"). Hancock has filed a motion to dismiss, arguing that it is not a fiduciary and that Charters lacks standing to sue on behalf of other plans with which he is not associated.

**I.  Background**

  **A.  Factual Background**

Charters is the trustee of the Charters, Heck, O'Donnell &

-1-

Petrulis, P.C. 401(k) plan ("the Plan"). The Plan is a "defined contribution" or "individual account" plan, which provides individual accounts for each participant and pays benefits to each participant based upon the amount of money in his or her account. The amount of benefits received by participants depends on the amount of money invested, the performance of the accounts' investments and the fees charged by the companies who manage the money.

Charters, as trustee of the Plan, purchased an Accumulated Retirement Account Group Annuity Contract ("the Contract") from Hancock in April, 2005. The Contract became effective on May 31, 2005. Under the Contract, Hancock holds and manages assets of the Plan ("the Assets") in an account maintained by Hancock, which is segregated from Hancock's general funds ("the Separate Account"). The Contract requires Hancock to invest the Assets and credit or charge any income, gains or losses from investment of the Assets to the Separate Account.

Hancock establishes and maintains a variety of investment options pursuant to the Contract, including a Guaranteed Interest Account and a variety of mutual fund investment options. Under the Contract, Hancock has the right to substitute alternate mutual funds, trusts or portfolios for the mutual funds it offers. Hancock offers the mutual funds through "sub-accounts" which are established and maintained by Hancock as bookkeeping

records to account for investment in the mutual funds. Hancock maintains a sub-account for each mutual fund offered under the Contract and allocates Assets in a participant's account to the particular sub-account that invests in the corresponding mutual fund. Hancock buys the shares of the mutual funds in its own name with its own assets in an amount equal to the value of the total amount pooled in the respective sub-account. The Separate Account and participants' accounts do not actually own shares of the mutual fund.

   As detailed in the Contract, Hancock charges a fixed participant fee and an asset charge based on the amount of Assets held in the Separate Account. Those charges compensate Hancock for performing record-keeping services. Under the Contract, Hancock also charges an annual investment charge for investments in each sub-account. The annual investment charge is comprised of the fee charged by the underlying mutual fund and an "administrative maintenance charge" levied by Hancock which compensates it for administering and maintaining each sub-account and can be as high as 50 to 75 basis points (0.5 percent to .75 percent) per dollar invested in each sub-account. Hancock does not levy an administrative maintenance charge with respect to investments in the Guaranteed Interest Account. Charters believes that the only administration or maintenance Hancock performs with respect to the sub-accounts is purchasing mutual

fund shares and that, consequently, the administrative maintenance charge is excessive.

     The annual administrative charge may be reduced by the amount, if any, that Hancock receives from the underlying mutual fund companies in the form of revenue sharing payments.  Charters alleges that Hancock receives revenue sharing payments in excess of the amount by which it reduces the administrative maintenance fee or in excess of the entire administrative maintenance fee authorized by the Contract.

**B.   Procedural History**

On July 26, 2007, Charters filed a complaint against Hancock alleging breach of fiduciary duty (Count I) and the commission of prohibited transactions (Count II).  In Count I Charters alleges that Hancock was a fiduciary of the Plan and that, by charging excessive fees and retaining revenue sharing payments for its own benefit, Hancock breached its fiduciary duty.  In Count II Charters alleges that Hancock, as a fiduciary, engaged in transactions prohibited by ERISA.  Hancock filed a motion to dismiss on October 5, 2007, which Charters opposes.

**II.   Analysis**

**A. Legal Standard**

A court may not dismiss a complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6) "unless it appears, beyond

doubt, that the [p]laintiff can prove no set of facts in support of his claim which would entitle him to relief." Judge v. City of Lowell, 160 F.3d 67, 72 (1st Cir. 1998)(quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). In considering the merits of a motion to dismiss, the court may look only to the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint and matters of which judicial notice can be taken. Nollet v. Justices of the Trial Court of Mass., 83 F. Supp. 2d 204, 208 (D. Mass. 2000) aff'd, 248 F.3d 1127 (1st Cir. 2000). Furthermore, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. Langadinos v. American Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000). If the facts in the complaint are sufficient to state a cause of action, a motion to dismiss the complaint must be denied. See Nollett, 83 F. Supp. 2d at 208.

    **B.  Motion to Dismiss (Docket No. 10)**

Hancock makes two arguments in its motion to dismiss. First, it argues that Hancock is not an ERISA fiduciary and second, it contends that Charters lacks standing to assert claims on behalf of any employee benefit plan other than his own.

    **1.  Hancock as a Fiduciary**

Claims for breach of fiduciary duty and prohibited transaction rules under ERISA §§ 404 and 406(b) may only be

asserted against a party that is a fiduciary within the meaning of ERISA.  <u>See</u> 29 U.S.C. §§ 1104, 1106(b); <u>see also</u> <u>Mertens</u> v. <u>Hewitt Assocs.</u>, 508 U.S. 248, 252-53 (1993).  Hancock argues that it is not an ERISA fiduciary because it does not exercise discretionary authority or control over the disposition of Plan assets.  Charters refutes that contention and also asserts that insurance companies issuing variable annuity contracts, such as Hancock, are fiduciaries with respect to assets held in the resulting separate accounts.

### a.   Authority or Control

ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A) defines a fiduciary.  The provision relevant to this case states that a person is a fiduciary with respect to a plan to the extent

> he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets.

<u>Id.</u>  Hancock argues that it does not exercise authority or control over Plan investments and thus is not a fiduciary of the Plan.

The First Circuit has indicated that the existence of discretion is a necessary element to give rise to fiduciary duty under ERISA.  <u>See</u> <u>Cottrill</u> v. <u>Sparrow, Johnson & Ursillo, Inc.</u>, 74 F.3d 20, 22 (1st Cir. 1996).  Hancock claims that here all discretion remained with Charters.  Charters chose Hancock (and therefore the investment platforms it offers) and selected the

specific investment options from those platforms that would be made available to participants.  Hancock asserts that it has only a ministerial role in the management of the Plan, a role that does not give rise to fiduciary status.  See Beddall v. State St. Bank and Trust Co., 137 F.3d 12, 20 (1st Cir. 1998) (holding that "mechanical administrative responsibilities...are insufficient to ground a claim of fiduciary status").

Under the Contract, however, Hancock has "the right to substitute shares of another mutual fund, trust or portfolio thereof with similar investment objectives for each Sub-account". The parties disagree about whether Hancock has the requisite control and authority to give rise to fiduciary status as a result of its choosing the menu of mutual fund options available to the Plan and retaining the right to substitute.  Hancock cites a Department of Labor ("DOL") advisory letter to Aetna Insurance Company, Inc. ("Aetna") in which DOL explains that, where a company provides ministerial services to a plan and retains the right to delete or substitute available investments, that company is not a fiduciary to the plan so long as the plan fiduciary makes the decision to accept or reject the change.  DOL Op. 97-16A, 1997 WL 277979 (May 22, 1997).

Another DOL advisory letter, however, published on the same day as the Aetna letter, notes that a bank serving as a trustee of ERISA plans may have discretionary authority or control over

plan assets if it has the right to add or remove "families" of mutual funds that it makes available to plans. DOL Op. 97-15A, 1997 WL 277980 (May 22, 1997). In this case, Hancock has a contractual right to substitute or delete mutual funds from its "menu" and it is not at all clear whether the Plan fiduciary has any control over such changes. A factfinder could reasonably determine that such an arrangement gives Hancock authority or control over the disposition of Plan assets. See Haddock v. Nationwide Fin. Servs., 419 F. Supp. 2d 156, 166 (D. Conn. 2006) (finding that there is a genuine issue of material fact as to whether defendant exercised authority or control of plan assets by virtue of its right to delete or substitute funds initially approved by the plan).

      **b.    Insurance Companies that Issue Variable Annuity Contracts**

Hancock's authority and control also may arise from its role in issuing variable annuity contracts. DOL regulations suggest that if an insurance company holds assets of a plan in a separate account and the insurance company's return on those assets is based on investment performance, the insurance company is responsible for those assets under general fiduciary rules. See, e.g., 29 C.F.R. § 2550.401c-1(d)(2)(c). Many of the authorities cited by Charters, however, focus on defining plan assets and do not address authority and control. See, e.g., DOL Op. 78-8A, 1978 WL 5840 (Mar. 13, 1978); DOL Op. 2005-22A, 2005 WL 3751637

(Dec. 7, 2005).  Because this Court finds that a trier of fact could reasonably determine that Hancock's power of substitution gives it discretionary control, this Court need not decide whether insurance companies that issue variable annuity contracts are thereby automatically rendered fiduciaries.  Hancock's motion to dismiss on the grounds that it is not a fiduciary will be denied.

### 2.   Standing for Class Action Purposes

Hancock also asserts that Charters has no standing to sue on behalf of sponsors, trustees and administrators of other plans with which Charters is not associated.  Charters cites cases from the Second, Fifth and Sixth Circuits that allow plaintiffs to bring class actions under ERISA on behalf of plans to which they are strangers as long as they meet Fed. R. Civ. P. 23 requirements.  See Cent. States Se. & Sw. Areas Health and Welfare Fund v. Merck-Medco Managed Care, LLC, 504 F.3d 229, 241 (2d Cir. 2007)(citing authority for the fact that once a named plaintiff demonstrates standing against each defendant, the standing issue is determined and the inquiry shifts to a class action analysis); Fallick v. Nationwide Mut. Ins. Co., 162 F.3d 410, 421-24 (6th Cir. 1998); Forbush v. J.C. Penney Co., 994 F.2d 1101 (5th Cir. 1993).  The reasoning of those cases is sound and applies equally to beneficiaries and fiduciaries suing on behalf of other representatives of plans with which they are not

associated. Hancock does not persuasively argue that Charters must have standing with respect to every plan of a putative class member. Consequently, Charters has standing at least to sue on behalf of trustees of other employee benefit plans that have purchased variable annuity contracts from Hancock. The Court does not, of course, address here whether Charters has met or can meet the requirements of Fed. R. Civ. P. 23.

Hancock makes two additional arguments regarding standing. It contends that plan sponsors, a category of claimants within Charters' proposed class, do not have a right of action under ERISA. State St. Bank and Trust Co. v. Denman Tire Corp., 240 F.3d 83, 88 (1st Cir. 2001) (stating that employers and pension funds may not sue for violations of ERISA). Because sponsors have no right to sue and Charters conceded as much at the hearing on Hancock's motion, its claim on behalf of sponsors will be dismissed. Hancock also points out that Charters is not a plan administrator and therefore cannot have sustained the requisite injury as an administrator. An administrator, however, may have responsibilities that overlap with a trustee, causing it to sustain common injuries. Whether administrators are appropriately part of the putative class in this case will be determined at the certification stage and thus Charters' claim on behalf of administrators will not, for now, be dismissed.

**ORDER**

In accordance with the foregoing, the defendant's motion to dismiss (Docket No. 10) is, with respect to its objection to plaintiff's standing as a representative of a class that includes sponsors, **ALLOWED,** but is otherwise **DENIED.**

**So ordered.**

/s/Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated December 21, 2007