UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN P. CHARTERS, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>JOHN HANCOCK LIFE INSURANCE COMPANY (U.S.A.)<br><br>        Defendant.<br><br>JOHN HANCOCK LIFE INSURANCE COMPANY (U.S.A.)<br><br>        Counterclaim Plaintiff,<br><br>v.<br><br>JOHN P. CHARTERS<br><br>        Counterclaim Defendant. | CIVIL ACTION<br>No. 1:07-cv-11371-NMG |

**DECLARATION OF JASON LEMIEUX IN SUPPORT OF
JOHN HANCOCK LIFE INSURANCE COMPANY (U.S.A.)'S
MOTION FOR SUMMARY JUDGMENT AS TO ALLEGED
<u>FIDUCIARY BREACH WITH RESPECT TO THE CHARTERS PLAN</u>**

I, Jason Lemieux, hereby declare as follows:

1.     I am Assistant Vice President of Investment Product Development of Retirement Plan Services with John Hancock Life Insurance Company (U.S.A.) ("John Hancock"). I submit this declaration in support of John Hancock's Motion for Summary Judgment as to Alleged Fiduciary Breach with Respect to the Charters Plan.

2.     I joined John Hancock in August 2004 as a Director of Investment Marketing for

Retirement Plan Services. I have been in my current position since November 15, 2006. I am involved in nearly all aspects of the selection of investment options comprising the John Hancock Retirement Plan Services investment product platform, including the establishment and maintenance of sub-accounts corresponding to the investment options and any changes or updates thereto.

3. I have personal knowledge of the facts set forth in this declaration, either through my direct involvement in the events and matters described herein, or through inquiries I have made within John Hancock.

4. On April 5, 2005, the trustee of the Charters, Heck, O'Donnell & Petrulis, P.C. ("Charters") 401(k) Plan (the "Plan" or the "Charters Plan") applied for an Accumulated Retirement Account Group Annuity Contract with John Hancock (the "Contract"). A copy of the Contract is attached hereto as Exhibit A. Also on April 5, 2005, the trustee of the Charters Plan signed the ARA Contract Proposal (the "Contract Proposal") that John Hancock prepared for the Charters Plan. A copy of the Contract Proposal is attached hereto as Exhibit B. The Contract Proposal outlined the services to be provided by John Hancock and the fees charged for such services. In the Contract Proposal, the Plan trustee selected which investment options the Plan would make available to Plan participants by selecting sub-accounts established and maintained by John Hancock that invest in mutual funds or other underlying investment products (the "Underlying Funds").

5. The Charters Plan trustee elected to offer Plan participants all of the investment options presented in the Contract Proposal and an insert that accompanied it detailing proposed fund changes for Spring 2005 – a total of 72 sub-accounts (and corresponding Underlying Funds) and one Guaranteed Interest Account.

2

6. The Contract became effective May 31, 2005. During the time that the Contract was in effect, May 31, 2005 through January 9, 2008, Charters Plan participants invested assets in the following sub-accounts on the John Hancock platform:

- JH Lifestyle Fund – Moderate Portfolio
- JH Lifestyle Fund – Balanced Portfolio
- JH Lifestyle Fund – Growth Portfolio
- JH Morgan Stanley Stable Value Fund (changed in Spring 2006 to JH John Hancock Stable Value Fund)
- 500 Index Fund
- JH Classic Value Fund
- JH American Funds Growth Fund of America
- JH Oppenheimer Global Fund
- JH Oppenheimer Developing Markets Fund

7. Under the Contract, John Hancock reserved the right to substitute a different Underlying Fund with similar investment objectives for the Underlying Fund in each sub-account. The Plan trustee, however, retained the absolute right to approve or reject any such proposed change, or alternatively to terminate the Contract with John Hancock and switch to another provider. The Plan trustee exercised this right and terminated the Contract effective January 9, 2008. A copy of the Discontinuance Letter and Notice of Termination (without enclosures) is attached hereto as Exhibit C.

8. Charters and the Plan trustee were informed of all proposed changes to the Plan's sub-accounts through twice-yearly mailings ("Fund Change Notifications"). The notifications concerning the only two substitutions of Underlying Funds in sub-accounts in which the Plan was invested were sent to Greta Mahon at Charters, whom the Plan trustee designated in the Contract Proposal as the Plan's primary contact. The notifications alerted the Charters Plan trustee to any proposed changes to a sub-account through the substitution of one Underlying Fund for another, explained the reasons for the change, gave the date the change would become effective, and provided fact sheets for any proposed new funds. In addition to alerting the Plan

3

trustee of proposed changes to a sub-account, the Fund Change Notifications also informed the Plan trustee of any changes that were being implemented by the Underlying Funds, such as a fund name change, a change of fund adviser, or reclassification of the fund's investment style or other attributes. While these fund-level changes did not constitute the substitution by John Hancock of an Underlying Fund in a sub-account, John Hancock included detailed descriptions of these changes as well.

9. Typically sent in the Fall and Spring, the Fund Change Notifications were also provided to Charters' broker, The Dickerson Group Benefits Company, LLC, in advance of mailing to Charters. Advance notice to the broker was intended to give the broker an opportunity to explain the upcoming changes to the Charters Plan trustee.

10. The Fund Change Notifications alerted the Plan trustee that upcoming changes to the sub-accounts would be implemented with respect to the Charters Plan unless the Plan trustee elected otherwise. The notifications informed the Plan trustee that, rather than the proposed change, he could elect to transfer the Plan's assets from an affected sub-account to a different existing sub-account, or add a specific alternate sub-account. Therefore, if the Plan trustee did not wish to have the change take effect as to the Plan, he could elect a different sub-account for investment, could remove the affected sub-account as an investment option, or could terminate the relationship with John Hancock and move the Plan's assets to another service provider.[1] The Fund Change Notifications also invited the Plan trustee to contact John Hancock with any questions about the proposed change or changes.

11. During the period that the Contract was in effect, the Plan trustee was provided

---

[1] While the Fund Change Notification typically invited the Plan trustee to inform John Hancock of any alternate elections by a date two to three weeks before the effective date of the proposed substitution, the Plan trustee had until close of the market on the business day prior to the effective date to make any such alternate elections.

with five Fund Change Notifications, only three of which impacted sub-accounts or Underlying Funds in which assets of the Plan were invested.

12. The Fund Change Notification for Fall 2005 was mailed on August 22, 2005, to Greta Mahon. A copy of the Fund Change Notification for Fall 2005 is attached hereto as Exhibit D. The notification described proposed changes to the underlying investments of the JH Lifestyle Fund Portfolio sub-accounts. These sub-accounts invested in funds that were themselves invested in a mix of asset classes designed for a specific risk tolerance, such as "aggressive," "moderate," "growth," or "conservative." Prior to Fall 2005, the JH Lifestyle Fund Portfolio sub-accounts invested directly in other sub-accounts that contained a mix of underlying retail funds. The Fund Change Notification for Fall 2005 stated that the underlying investments of the JH Lifestyle Fund Portfolio sub-accounts would be replaced by a new suite of John Hancock Funds II (JHFII) Lifestyle Portfolios (the "JHFII Lifestyle Portfolios"), which in turn would invest directly in a mix of underlying sub-advised funds, as opposed to investing in other sub-accounts. The JHFII Lifestyle Portfolios would retain the same asset manager, investment process, and asset allocation methodology as the original JH Lifestyle Fund Portfolio sub-accounts. The new sub-advised structure would result in a reduction of up to 8 basis points in the annual investment charges to investors. John Hancock provided the Charters Plan trustee with 67 days notice of the change, which would become effective on October 28, 2005. The notification informed the Plan trustee that if he chose to reject the proposed substitution for his Plan, he could instead elect "to add a specific alternate Fund from [John Hancock's] lineup or transfer [the Plan's] assets from one or more of the current Lifestyle [Portfolios] to a different existing Fund or Funds," and that if no such direction was received, John Hancock would consider the Plan trustee to "have approved the proposed changes." The Plan trustee was also

5

invited to contact John Hancock with any questions or concerns regarding the proposed changes.

13.     The Fund Change Notification for Spring 2006 was mailed to Greta Mahon at Charters on March 6, 2006. A copy of the Fund Change Notification for Spring 2006 is attached hereto as Exhibit E. The notification described two categories of changes: (i) changes John Hancock would be making to three sub-accounts on its platform, only one of which was a sub-account in which the Plan was invested; and (ii) other changes that were being implemented by fund advisers at the Underlying Fund level. The Fund Change Notification for Spring 2006 provided detailed descriptions of the upcoming changes, including the reasons for the changes, and provided fact sheets for any proposed new funds. The notification alerted the Plan trustee that he "may transfer [his] plan's assets from an affected Fund to a different existing Fund or add a specific alternate Fund," and advised the Plan trustee that changes would be implemented "unless [he] elect[ed] otherwise."

14.     The only sub-account in which assets of the Charters Plan were invested that was impacted by a proposed change in Spring 2006 was the stable value sub-account. John Hancock proposed to substitute the John Hancock Stable Value fund for the Morgan Stanley Stable Value Fund within that sub-account. The Morgan Stanley Stable Value Fund was an Underlying Fund managed by Morgan Stanley that invested in fixed-income investment vehicles with the goal of preserving capital and providing stable investment returns. The substitution of the John Hancock Stable Value Fund for the Morgan Stanley Stable Value Fund, which also would invest in fixed-income with the goal of preserving capital and providing stable investment returns, resulted in no change of investment style, risk/return category, or annual investment charge. It also resulted in no change to the annual charges to the Plan for assets invested in the sub-account. Thus, the cost to the Plan and its participants remained exactly the same. The Fund Change Notification for

Spring 2006 provided the Charters Plan trustee with 61 days notice of the change to the stable value sub-account, which would become effective on May 6, 2006.

15.     Greta Mahon at Charters was also sent a copy of the John Hancock Stable Value Fund Collective Investment Trust Offering Memorandum and Declaration of Trust, which advised that by not objecting to the proposed substitution, the Plan trustee, among other things, would be deemed to have directed the change. The Plan trustee was invited to contact John Hancock with any questions. A copy of the John Hancock Stable Value Fund Collective Investment Trust Offering Memorandum and Declaration of Trust is attached hereto as Exhibit F.

16.     The Fund Change Notification for Fall 2007 was mailed to Connie Bismack at Charters on September 4, 2007. A copy of the Fund Change Notification for Fall 2007 is attached hereto as Exhibit G. The notification described two categories of changes: (i) changes John Hancock would be making to three sub-accounts on its platform, none of which were sub-accounts in which the Plan was invested; and (ii) other changes that were being implemented by fund advisers at the Underlying Fund level. The Fund Change Notification for Fall 2007 provided detailed descriptions of the proposed changes to the sub-accounts, as well as any changes to the Underlying Funds, including the reasons for the changes. It also stated that it was designed to help the Plan trustee with his "fiduciary responsibilities" as he "manage[d] [his] plan's investment lineup," and that the trustee could "transfer [] plan assets from an affected Fund to a different existing Fund or add a specific alternative Fund from [the John Hancock] lineup to receive the transfer from the affected Fund." John Hancock announced no changes to any sub-account in which assets of the Charters Plan were invested during this period. Only one of the sub-accounts in which assets of the Charters Plan were invested – the JH Oppenheimer

of the sub-accounts in which assets of the Charters Plan were invested – the JH Oppenheimer Developing Markets Fund – was affected by changes made by the Underlying Funds described in the Fund Change Notification for Fall 2007. The Plan trustee was notified of a change to the Underlying Fund's (Oppenheimer Developing Markets Fund's) asset class. Specifically, Oppenheimer was changing the "style box," or classification of the fund's asset allocation strategy, from International/Global Value to International/Global Blend.

17.  No one from Charters ever rejected any proposed change that impacted its Plan.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 7th day of March, 2008.

*[signature]*
Jason Lemieux

1869178


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and electronic mail copies will be sent to those indicated as non-registered participants on March 7, 2008.

/s/ James O. Fleckner
James O. Fleckner